**UNITED STATES of America,**

v.

**Kenneth JOHNSON a/k/a Hassan Kenneth Johnson, Appellant,**

**United States Of America,**

v.

**Dadaji Ibn–Sekou Odinga a/k/a Dadaji S. Early Dadaji Ibn–Sekou Odinga, Appellant.**

**Nos. 00–1244, 02–2684.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 16, 2002.

Decided Dec. 18, 2002.

Before SLOVITER, RENDELL, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellants Kenneth Johnson and Dadaji Ibn–Sekou Odinga, a/k/a Dadaji Early (herein referred to as Early), were among the defendants convicted in a multi-defendant indictment of, *inter alia,* conspiring to obtain firearms through straw purchases. They both recruited persons who had valid forms of Pennsylvania identification and no criminal records to purchase the semi-automatic firearms for them, drove them to the gun stores, told them which guns to purchase, gave them money for the purchases and took possession of the firearms immediately thereafter. At least nine straw purchasers testified, identified Johnson as one of the people for whom they purchased firearms, and testified that they purchased in excess of eighty firearms. There was also testimony by the firearms dealer implicating both Johnson and Early. The issues the defendants raise on appeal are limited to sentencing.

### Kenneth Johnson

Johnson was convicted of conspiracy and 43 counts of making false statements. In sentencing Johnson, the District Court found that he was responsible for obtaining eighty-three (83) firearms over a period of six months, enhanced his base offense level by six levels pursuant to U.S.S.G. § 2K2.1(b)(1)(F); found that he was a leader who used more than five individuals to purchase firearms for him and increased Johnson's offense level by an additional four levels pursuant to U.S.S.G. § 3B1.1(a); and enhanced his of-fense level by one additional level pursuant to the Government's motion for an upward enhancement pursuant to U.S.S.G. § 2K2.1(b) Application Note 16, based on the type and number of firearms purchased during the conspiracy. Johnson's lawyer did not contest the calculations that led his total offense level of 22 but did contest the upward departure.

According to the table set forth in Section 2K2.1(b)(1):

| | | |
|---|---|---|
| (A) | 3–4 | add 1 |
| (B) | 5–7 | add 2 |
| (C) | 8–12 | add 3 |
| (D) | 13–24 | add 4 |
| (E) | 25–49 | add 5 |
| (F) | 50 or more | add 6 |

Application Note 16 of § 2K2.1 states that an "upward departure may be warranted [if] ... the number of firearms significantly exceeded 50."

The District Court reasoned that eighty (80) firearms significantly exceeded 50 and granted an upward departure of one level. Johnson argues that the number of firearms additional to 50 was already accounted for under the guideline itself and therefore the upward departure was not warranted. Johnson argues that the Commission did not intend to increase the number of offense levels by a uniform proportion depending on the number of firearms and that the Commission meant to cap-off the offense level increases to a total of 6 levels for up to 100 firearms. Johnson argues that if the Government's position focusing on the progressive structure of subsection (b)(1) is accepted, then although subsection (E) increases the offense level by 5 levels for involvement of 25 to 49 guns, the Government would have been entitled to seek an increase of 6 levels for involvement of 51 guns. He states that the Sentencing Commission did not intend to provide a one-point enhancement for only 1 more gun.

■ Whatever might have been the situation if Johnson were responsible for 51 guns, in fact he was held responsible for more than 80 guns, which represents an involvement of 30 more guns than 50. The Sentencing Commission's authorization to increase the offense level for more than 50 guns is reflected in the Application Note. Certainly involvement of 30 more guns "significantly exceeded" 50 guns.

The District Court certainly had discretion to consider more than mathematics in determining the extent of any upward departure. The Government argued before the District Court that only seven of the firearms involved have been recovered, of which four were involved in drug offenses and three were recovered from convicted felons, one of whom has a history of narcotics convictions, which demonstrates the dangerousness of the offenses for which Johnson was convicted. It is also significant, and may have been taken into account by the District Court, that all of the recoveries were from individuals ranging in age from 19 to 24. Another significant factor that the Government called to the District Court's attention was that every firearm Johnson and Early purchased or attempted to purchase was a semi-automatic weapon.

In fact, the District Court's comments at sentencing that there could have been a greater increase than the one level increase for which the Government moved reflected its consideration of the dangerousness of Johnson's activities.

Because it is evident that the District Court exercised its discretion in granting an upward departure of one level, that that departure was within its authority under the explicit language of the sentencing guideline, and that the decision was reasonable in light of the dangerousness of the defendant's conduct, we will affirm.

*Dadaji Early*

Early was convicted of conspiracy and of nine separate counts of false representation to obtain firearms. He was sentenced to 16 years of imprisonment followed by 3 years of supervised release. He appealed previously, and this court affirmed the judgment of the District Court but vacated the sentence and remanded so that the District Court could clarify its reasons for denying Early's motion for a downward departure. On remand, the District Court conducted a hearing and again denied a downward departure.

Early contends that he was confined to the county prison at Passaic County while he was awaiting sentencing, and that while there he was subjected to substandard conditions of confinement, which entitled him to a downward departure. He alleged that he was housed in a jail holding over twice the inmate population that it was built for, such overcrowding created a health hazard and an intensely violent situation, the immigrant block in which he was housed held more than twice the population for which it was built, there were daily threats of violence, he was stabbed in the face while sleeping under his right eye, a psychiatrist had to prescribe medicine so that he could sleep, inmates were denied regular outside activities, the dormitories had no fresh air and no sunlight, recreational activities were substandard, and federal inmates were denied privileges allowed to state inmates.

■ Following this court's remand, the District Court determined that the conditions faced by Early were not extraordinary for a prison setting, and were not unique to him. Early appeals from the decision of the District Court not to depart. We have consistently taken the position that we have no jurisdiction to review the District Court's discretionary denial of a defendant's downward departure motion

as long as the District Court recognizes its discretion but chooses not to depart. *See United States v. Denardi*, 892 F.2d 269 (3d Cir.1989). The Supreme Court has recently approved that procedure in *United States v. Ruiz*, 536 U.S. 622, 122 S.Ct. 2450, 2453, 153 L.Ed.2d 586 (2002). In holding that the prison conditions to which Early was subject were not extraordinary, the District Court stated that it took the pretrial conditions of confinement into consideration when it determined the appropriate sentence to be imposed within the guideline range. It is clear that the District Court recognized its discretion and sentenced accordingly. For that reason we have no jurisdiction over Odinga's appeal, and will dismiss it.

For the reasons set forth above we will affirm the order of the District Court in Johnson's appeal, No. 00–1244, and we will dismiss Odinga's appeal, No. 02–2684.