# UNITED STATES *v.* RUIZ

No. 01–595.   Argued April 24, 2002—Decided June 24, 2002

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, SCALIA, KENNEDY, SOUTER, and GINSBURG, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment, *post*, p. 633.

*Solicitor General Olson* argued the cause for the United States. With him on the brief were *Assistant Attorney General Chertoff, Deputy Solicitor General Dreeben, Irving L. Gornstein,* and *Jonathan L. Marcus.*

*Steven F. Hubachek,* by appointment of the Court, 534 U. S. 1126, argued the cause for respondent. With him on the brief was *Benjamin L. Coleman.**

---

*A brief of *amici curiae* urging reversal was filed for the State of Ohio et al. by *Betty D. Montgomery,* Attorney General of Ohio, *David M. Gormley,* State Solicitor, *Stephen P. Carney,* Associate Solicitor, *Diane M. Welsh,* and *Dan Schweitzer,* and by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Carla J. Stovall* of Kansas, *Thomas F. Reilly* of Massachusetts, *Mike Moore* of Mississippi, *Mike McGrath* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Eliot Spitzer* of New York, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *D. Michael Fisher* of Pennsylvania, *Anabelle Rodriquez* of Puerto Rico, *Paul G. Summers* of Tennessee, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, and *Hoke MacMillan* of Wyoming.

*John T. Philipsborn* and *David M. Porter* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae.*

JUSTICE BREYER delivered the opinion of the Court.

In this case we primarily consider whether the Fifth and Sixth Amendments require federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose "impeachment information relating to any informants or other witnesses." App. to Pet. for Cert. 46a. We hold that the Constitution does not require that disclosure.

I

After immigration agents found 30 kilograms of marijuana in Angela Ruiz's luggage, federal prosecutors offered her what is known in the Southern District of California as a "fast track" plea bargain. That bargain—standard in that district—asks a defendant to waive indictment, trial, and an appeal. In return, the Government agrees to recommend to the sentencing judge a two-level departure downward from the otherwise applicable United States Sentencing Guidelines sentence. In Ruiz's case, a two-level departure downward would have shortened the ordinary Guidelines-specified 18-to-24-month sentencing range by 6 months, to 12-to-18 months. 241 F. 3d 1157, 1161 (2001).

The prosecutors' proposed plea agreement contains a set of detailed terms. Among other things, it specifies that "any [known] information establishing the factual innocence of the defendant" "has been turned over to the defendant," and it acknowledges the Government's "continuing duty to provide such information." App. to Pet. for Cert. 45a–46a. At the same time it requires that the defendant "waiv[e] the right" to receive "impeachment information relating to any informants or other witnesses" as well as the right to receive information supporting any affirmative defense the defendant raises if the case goes to trial. Id., at 46a. Because Ruiz would not agree to this last-mentioned waiver, the prosecutors withdrew their bargaining offer. The Government then indicted Ruiz for unlawful drug possession. And despite

the absence of any agreement, Ruiz ultimately pleaded guilty.

At sentencing, Ruiz asked the judge to grant her the same two-level downward departure that the Government would have recommended had she accepted the "fast track" agreement. The Government opposed her request, and the District Court denied it, imposing a standard Guideline sentence instead. 241 F. 3d, at 1161.

Relying on 18 U. S. C. § 3742, see *infra*, at 627, 628–629, Ruiz appealed her sentence to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit vacated the District Court's sentencing determination. The Ninth Circuit pointed out that the Constitution requires prosecutors to make certain impeachment information available to a defendant before trial. 241 F. 3d, at 1166. It decided that this obligation entitles defendants to receive that same information before they enter into a plea agreement. *Id.*, at 1164. The Ninth Circuit also decided that the Constitution prohibits defendants from waiving their right to that information. *Id.*, at 1165–1166. And it held that the prosecutors' standard "fast track" plea agreement was unlawful because it insisted upon that waiver. *Id.*, at 1167. The Ninth Circuit remanded the case so that the District Court could decide any related factual disputes and determine an appropriate remedy. *Id.*, at 1169.

The Government sought certiorari. It stressed what it considered serious adverse practical implications of the Ninth Circuit's constitutional holding. And it added that the holding is unique among courts of appeals. Pet. for Cert. 8. We granted the Government's petition. 534 U. S. 1074 (2002).

## II

At the outset, we note that a question of statutory jurisdiction potentially blocks our consideration of the Ninth Circuit's constitutional holding. The relevant statute says that a

"defendant may file a notice of appeal . . . for review . . . if the sentence

"(1) was imposed in violation of law;

"(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

"(3) is greater than [the Guideline] specified [sentence] . . . ; or

"(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U. S. C. § 3742(a).

Every Circuit has held that this statute does *not* authorize a defendant to appeal a sentence where the ground for appeal consists of a claim that the district court abused its discretion in refusing to depart. See, *e. g., United States* v. *Conway,* 81 F. 3d 15, 16 (CA1 1996); *United States* v. *Lawal,* 17 F. 3d 560, 562 (CA2 1994); *United States* v. *Powell,* 269 F. 3d 175, 179 (CA3 2001); *United States* v. *Ivester,* 75 F. 3d 182, 183 (CA4 1996); *United States* v. *Cooper,* 274 F. 3d 230, 248 (CA5 2001); *United States* v. *Scott,* 74 F. 3d 107, 112 (CA6 1996); *United States* v. *Byrd,* 263 F. 3d 705, 707 (CA7 2001); *United States* v. *Mora-Higuera,* 269 F. 3d 905, 913 (CA8 2001); *United States* v. *Garcia-Garcia,* 927 F. 2d 489, 490 (CA9 1991); *United States* v. *Coddington,* 118 F. 3d 1439, 1441 (CA10 1997); *United States* v. *Calderon,* 127 F. 3d 1314, 1342 (CA11 1997); *In re Sealed Case No. 98–3116,* 199 F. 3d 488, 491–492 (CADC 1999).

The statute does, however, authorize an appeal from a sentence that "was imposed in violation of law." Two quite different theories might support appellate jurisdiction pursuant to that provision. First, as the Court of Appeals recognized, if the District Court's sentencing decision rested on a mistaken belief that it lacked the legal power to grant a departure, the quoted provision would apply. 241 F. 3d, at 1162, n. 2. Our reading of the record, however, convinces us that the District Judge correctly understood that he had such discretion but decided not to exercise it. We therefore reject

that basis for finding appellate jurisdiction. Second, if respondent's constitutional claim, discussed in Part III, *infra,* were sound, her sentence would have been "imposed in violation of law." Thus, if she had prevailed on the merits, her victory would also have confirmed the jurisdiction of the Court of Appeals.

Although we ultimately conclude that respondent's sentence was not "imposed in violation of law" and therefore that § 3742(a)(1) does not authorize an appeal in a case of this kind, it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction. See *United States* v. *Mine Workers,* 330 U. S. 258, 291 (1947). In order to make that determination, it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper.

## III

The constitutional question concerns a federal criminal defendant's waiver of the right to receive from prosecutors exculpatory impeachment material—a right that the Constitution provides as part of its basic "fair trial" guarantee. See U. S. Const., Amdts. 5, 6. See also *Brady* v. *Maryland,* 373 U. S. 83, 87 (1963) (Due process requires prosecutors to "avoi[d] . . . an unfair trial" by making available "upon request" evidence "favorable to an accused . . . where the evidence is material either to guilt or to punishment"); *United States* v. *Agurs,* 427 U. S. 97, 112–113 (1976) (defense request unnecessary); *Kyles* v. *Whitley,* 514 U. S. 419, 435 (1995) (exculpatory evidence is evidence the suppression of which would "undermine confidence in the verdict"); *Giglio* v. *United States,* 405 U. S. 150, 154 (1972) (exculpatory evidence includes "evidence affecting" witness "credibility," where the witness' "reliability" is likely "determinative of guilt or innocence").

When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying consti-

tutional guarantees. *Boykin* v. *Alabama*, 395 U. S. 238, 243 (1969) (pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury). Given the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is "voluntary" and that the defendant must make related waivers "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Brady* v. *United States*, 397 U. S. 742, 748 (1970); see also *Boykin, supra,* at 242.

In this case, the Ninth Circuit in effect held that a guilty plea is not "voluntary" (and that the defendant could not, by pleading guilty, waive her right to a fair trial) unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted upon a trial. We must decide whether the Constitution requires that preguilty plea disclosure of impeachment information. We conclude that it does not.

First, impeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary* ("knowing," "intelligent," and "sufficient[ly] aware"). Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant. *Weatherford* v. *Bursey,* 429 U. S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case"). And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it. A defendant, for example, may waive his right to remain silent, his

right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide. Cf. *Colorado v. Spring*, 479 U. S. 564, 573–575 (1987) (Fifth Amendment privilege against self-incrimination waived when defendant received standard *Miranda* warnings regarding the nature of the right but not told the specific interrogation questions to be asked).

It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose.

Second, we have found no legal authority embodied either in this Court's past cases or in cases from other circuits that provides significant support for the Ninth Circuit's decision. To the contrary, this Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. See *Brady* v. *United States*, 397 U. S., at 757 (defendant "misapprehended the quality of the State's case"); *ibid.* (defendant misapprehended "the likely penalties"); *ibid.* (defendant failed to "anticipate" a change in the law regarding relevant "punishments"); *McMann* v. *Richardson*, 397 U. S. 759, 770 (1970) (counsel "misjudged the admissibility" of a "confession"); *United States* v. *Broce*, 488 U. S. 563, 573 (1989) (counsel failed to point out a potential defense); *Tollett* v. *Henderson*, 411 U. S. 258, 267

(1973) (counsel failed to find a potential constitutional infirmity in grand jury proceedings). It is difficult to distinguish, in terms of importance, (1) a defendant's ignorance of grounds for impeachment of potential witnesses at a possible future trial from (2) the varying forms of ignorance at issue in these cases.

Third, due process considerations, the very considerations that led this Court to find trial-related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the "right" that the Ninth Circuit found here. This Court has said that due process considerations include not only (1) the nature of the private interest at stake, but also (2) the value of the additional safeguard, and (3) the adverse impact of the requirement upon the Government's interests. *Ake* v. *Oklahoma*, 470 U. S. 68, 77 (1985). Here, as we have just pointed out, the added value of the Ninth Circuit's "right" to a defendant is often limited, for it depends upon the defendant's independent awareness of the details of the Government's case. And in any case, as the proposed plea agreement at issue here specifies, the Government will provide "any information establishing the factual innocence of the defendant" regardless. That fact, along with other guilty-plea safeguards, see Fed. Rule Crim. Proc. 11, diminishes the force of Ruiz's concern that, in the absence of impeachment information, innocent individuals, accused of crimes, will plead guilty. Cf. *McCarthy* v. *United States*, 394 U. S. 459, 465–467 (1969) (discussing Rule 11's role in protecting a defendant's constitutional rights).

At the same time, a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice. The Ninth Circuit's rule risks premature disclosure of Government witness information, which, the Government tells us, could "disrupt ongoing

investigations" and expose prospective witnesses to serious harm. Brief for United States 25. Cf. Amendments to Federal Rules of Criminal Procedure: Hearings before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 94th Cong., 1st Sess., 92 (1975) (statement of John C. Keeney, Acting Assistant Attorney General, Criminal Div., Dept. of Justice) (opposing mandated witness disclosure three days before trial because of documented instances of witness intimidation). And the careful tailoring that characterizes most legal Government witness disclosure requirements suggests recognition by both Congress and the Federal Rules Committees that such concerns are valid. See, e. g., 18 U. S. C. § 3432 (witness list disclosure required in capital cases three days before trial with exceptions); § 3500 (Government witness statements ordinarily subject to discovery only after testimony given); Fed. Rule Crim. Proc. 16(a)(2) (embodies limitations of 18 U. S. C. § 3500). Compare 156 F. R. D. 460, 461–462 (1994) (congressional proposal to significantly broaden § 3500) with 167 F. R. D. 221, 223, n. (judicial conference opposing congressional proposal).

Consequently, the Ninth Circuit's requirement could force the Government to abandon its "general practice" of not "disclos[ing] to a defendant pleading guilty information that would reveal the identities of cooperating informants, undercover investigators, or other prospective witnesses." Brief for United States 25. It could require the Government to devote substantially more resources to trial preparation prior to plea bargaining, thereby depriving the plea-bargaining process of its main resource-saving advantages. Or it could lead the Government instead to abandon its heavy reliance upon plea bargaining in a vast number—90% or more—of federal criminal cases. We cannot say that the Constitution's due process requirement demands so radical a change in the criminal justice process in order to achieve so comparatively small a constitutional benefit.

These considerations, taken together, lead us to conclude that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.

In addition, we note that the "fast track" plea agreement requires a defendant to waive her right to receive information the Government has regarding any "affirmative defense" she raises at trial. App. to Pet. for Cert. 46a. We do not believe the Constitution here requires provision of this information to the defendant prior to plea bargaining—for most (though not all) of the reasons previously stated. That is to say, in the context of this agreement, the need for this information is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea; the value in terms of the defendant's added awareness of relevant circumstances is ordinarily limited; yet the added burden imposed upon the Government by requiring its provision well in advance of trial (often before trial preparation begins) can be serious, thereby significantly interfering with the administration of the plea-bargaining process.

For these reasons the judgment of the Court of Appeals for the Ninth Circuit is

*Reversed.*

JUSTICE THOMAS, concurring in the judgment.

I agree with the Court that the Constitution does not require the Government to disclose either affirmative defense information or impeachment information relating to informants or other witnesses before entering into a binding plea agreement with a criminal defendant. The Court, however, suggests that the constitutional analysis turns in some part on the "degree of help" such information would provide to the defendant at the plea stage, see *ante*, at 630, 631, a distinction that is neither necessary nor accurate. To the extent that the Court is implicitly drawing a line based on a

flawed characterization about the usefulness of certain types of information, I can only concur in the judgment. The principle supporting *Brady* was "avoidance of an unfair trial to the accused." *Brady* v. *Maryland*, 373 U. S. 83, 87 (1963). That concern is not implicated at the plea stage regardless.