**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry KAPP (02–4216);  Robert
Schneider (02–4266), Defen-
dants–Appellants,**

**Nos. 02–4216, 02–4266.**

United States Court of Appeals,
Sixth Circuit.

Sept. 9, 2004.

Robert Brichler, U.S. Attorney's Office Southern District of Ohio, Cincinnati, OH, for Plaintiff–Appellee.

Hal Roger Arenstein, Arenstein & Gallagher, Cincinnati, OH, for Defendant–Appellant.

Before: BATCHELDER and GIBBONS, Circuit Judges;  and COHN,

District Judge.*

GIBBONS, Circuit Judge.

Defendants-appellants Larry Kapp and Robert Schneider were indicted in the United States District Court for the Southern District of Ohio for conspiracy to distribute and conspiracy to possess with intent to distribute in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846, and for attempt to possess with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. § 846. Kapp and Schneider pled guilty to the conspiracy charge. On appeal, Kapp argues that the district court erred by not departing downward from the statutory minimum sentence to the extent requested by Kapp and the government. Schneider argues that the district court erred in applying a sentence enhancement for his role in the offense. With regard to Kapp, we find that we have no jurisdiction to consider his claim. With regard to Schneider, we affirm the district court's decision to enhance his sentence based on his role in the offense.

## I.

The factual basis for the charges was accurately summarized by the district court as follows:

> Beginning in November 2001, Larry Kapp, Paul Snyder, Robert Schneider, and Douglas Hartman conspired with each other and others to distribute marihuana in the Southern District of Ohio and the Eastern District of Kentucky. Larry Kapp and Paul Snyder lived in the Tucson, Arizona area where they would obtain 500 to 700 hundred [sic] pound shipments of marihuana for Robert Schneider in Dayton, Ohio and other

conspirators in northern Kentucky. Kapp hired a courier named James Reak to assist him in transporting the marihuana. Paul Snyder would prepare the marihuana for shipment by wrapping it and then loading it in pickup trucks for shipment. Kapp and Reak would drive the marihuana to Ohio using two vehicles, one to carry the marihuana and the other to watch for police activity. Once the marihuana reached Dayton, Ohio Kapp and Reak would check into a motel and notify Robert Schneider. The marihuana would be given to Robert Schneider who would pay Kapp and then distribute it to customers in the Southern District of Ohio. Douglas Hartman was hired by Robert Schneider to assist him in transporting the marihuana from the motel lots to Schneider's home in Dayton, Ohio. Robert Schneider had a special climate controlled room built in his garage which he used to store the marihuana until it was sold.

> Reak made three of these trips to Ohio. The first two trips were made with Larry Kapp and the marihuana was successfully delivered. On the last trip, March 11, 2002, Reak was transporting 700 pounds of marihuana alone when he was arrested by the Arizona Department of Public Safety after a traffic stop. Reak cooperated with the police and agreed to assist them by delivering the marihuana as intended. Reak made recorded telephone calls to Larry Kapp, Paul Snyder, and Robert Schneider during which the progress of the intended delivery was discussed.

> On March 13, 2002, Robert Schneider and Douglas Hartman drove to Cincinnati in separate vehicles to meet Reak at a motel to pick up the marihuana.

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

Schneider brought $10,000 in cash to pay Reak for driving the marihuana. They were arrested after they met Reak and loaded the marihuana into Schneider's vehicle.

Search warrants were obtained in Dayton for Robert Schneider's and Douglas Hartman's homes. In Schneider's home the police found about 25 pounds of marihuana, and $661,489.00 in cash, the proceeds from the sale of marihuana. In Hartman's home police found scales and $295,550.00 in cash that Hartman was holding for Robert Schneider.

At the same time Search Warrants were obtained in Tucson, Arizona for the homes of Larry Kapp and Paul Snyder. Police seized $7,000.00 in cash from Kapp and approximately $33,000.00 in cash from Paul Snyder. Kapp voluntarily took police to a location where he was holding over $1,100,000.00 in cash that he owed to his supplier. The money was turned over to Arizona authorities for forfeiture. In addition Arizona police seized 1100 pounds of marihuana from a stash house utilized by Kapp and Paul Snyder.

At sentencing, Kapp's base offense level was determined to be 32, due to the quantity of marijuana involved. The district court granted a two level decrease in Kapp's offense level pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(a) because he accepted personal responsibility for his criminal conduct. The court also granted a one level decrease pursuant to U.S.S.G. § 3E1.1(b) because he timely notified the government of his intention to plead guilty.

The government moved for a further five level reduction pursuant to U.S.S.G. § 5K1.1 because Kapp provided substantial assistance to the United States. The district court agreed that a reduction was appropriate but ultimately did not depart from the sentencing guidelines to the requested extent for two reasons. First, the court stated that "[a]lthough the Court does recognize the Defendant's cooperation with the government, his past conduct, which as further explained below involves substantial contact with law enforcement and the criminal justice system, weighs against granting the full departure sought by the government." Second, the court found that Kapp's continued drug use while on bond prior to sentencing compromised his value as a witness for the prosecution in future cases. For both of these reasons, the court declined to grant the full downward departure requested by the government.

Kapp's presentence investigation report assigned him three criminal history points, placing him in criminal history category II. Prior to sentencing, however, the court notified the parties that it was considering an upward departure from criminal history category II because it believed that the "information contained in the presentence investigation report indicated that criminal history category II both understates the seriousness of the Defendant's past criminal conduct and the likelihood that he will commit other crimes in the future." Nevertheless, the district court ultimately declined to depart upward with regard to Kapp's criminal history category, stating, "[a]lthough we have our suspicions, the Court cannot, however, say that Defendant's criminal history score is understated. Therefore, the Court will not upwardly depart from criminal history category II."

Kapp's offense level of 29 and criminal history category of II provided a sentencing range of 87 to 108 months. However, the statutory minimum sentence for the offenses for which Kapp was convicted was 120 months. Under U.S.S.G. § 5G1.1(b), if the statutory minimum sentence exceeds

the maximum guideline sentence, the statutory minimum becomes the guideline sentence. Therefore, Kapp's guideline sentence was 120 months. The prosecution filed a motion for a downward departure from the guideline range under U.S.S.G. § 5K1.1. The prosecution asked that Kapp be sentenced at offense level 24. The district court declined to depart downward to the extent requested by the government, finding that "a 24 month reduction from the mandatory minimum is an appropriate sentence in this case." The court therefore sentenced Kapp to 96 months imprisonment, 24 months below the statutory minimum of 120 months.

At sentencing, Schneider's base offense level was determined to be 30, due to the quantity of marijuana involved. Schneider's presentence report recommended that he be assessed two points pursuant to U.S.S.G. § 3B1.1(c) because of his role as an organizer, leader, manager, or supervisor in the criminal activity.

Schneider objected to this enhancement, but the district court overruled his objection and assessed the two points, bringing his offense level to 32 and his guideline range to 87 to 108 months. Schneider argues that the co-conspirator he allegedly supervised, Douglas Hartman, was simply a friend, and that their activities were a natural extension of their prior friendship, not evidence of a supervisory relationship. The district court disagreed, reasoning that

> the Defendant's relationship with Hartman as it related to the criminal conspiracy transcended friendship. The Defendant recruited Hartman into the conspiracy and directed Hartman's activities. For instance, Hartman safeguarded the Defendant's drug proceeds at the Defendant's request and acted as the Defendant's chauffeur. As compared to Hartman, the Defendant by far claimed the lion's share of proceeds from the drug trafficking conspiracy. The Defendant acted as paymaster, giving Hartman relatively small sums in comparison to the substantial revenue generated from the conspiracy. The Court agrees with the probation officer's conclusion that Hartman acted as the Defendant's employee and that the Defendant was his manager.

The district court then granted a two level decrease in Schneider's offense level pursuant to U.S.S.G. § 3E1.1(a) because he accepted personal responsibility for his conduct, and a one level reduction pursuant to U.S.S.G. § 3E1.1(b) because he timely notified the government of his intention to plead guilty and provided complete information regarding his role in the offense. The district court then granted the prosecution's motion for a downward departure of four more levels under U.S.S.G. § 5K1.1 because of Schneider's substantial assistance, bringing Schneider's offense level to 25. The district court placed Schneider in criminal history category I. The sentencing guidelines establish a range of 57 to 71 months imprisonment based on a total combined offense level of 25 and a criminal history category of I. The district court sentenced Schneider to 57 months imprisonment.

## II.

The district court's factual findings on guideline sentencing issues are reviewed for clear error. *United States v. Clements*, 144 F.3d 981, 982 (6th Cir.1998). The court's application of the guidelines to a particular set of facts is reviewed *de novo*. *United States v. Barton*, 100 F.3d 43, 44 (6th Cir.1996).

## III.

### A. Kapp

Kapp challenges the district court's decision not to depart downward from the

sentencing guidelines to the extent requested by the prosecution. Sentencing decisions of the district courts are reviewable as provided by 18 U.S.C. § 3742. This provision authorizes review of a sentence that (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is greater than the sentence specified in the applicable guideline range; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. 18 U.S.C. § 3742(a) (2004). However, as the Supreme Court has recognized, this provision "does *not* authorize a defendant to appeal a sentence where the ground for appeal consists of a claim that the district court abused its discretion in refusing to depart." *United States v. Ruiz*, 536 U.S. 622, 627, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002).

Sixth Circuit precedent is consistent with *Ruiz*. This court stated in *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995), "the refusal of a district judge to make a downward departure is not ordinarily appealable." "Where ... the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the failure to depart is not cognizable on appeal under 18 U.S.C. § 3742(a)." *Id.* (quoting *United States v. Davis*, 919 F.2d 1181, 1187 (6th Cir.1990)); *see also United States v. Welch*, 97 F.3d 142, 152 (6th Cir.1996) ("When the District Court is aware of its discretion to depart from the guidelines, failure to do so is not appealable."). Additionally, in *United States v. Gregory*, 932 F.2d 1167 (6th Cir.1991), this court specifically considered the issue of whether it has jurisdiction to hear an appeal based on the degree of a district court's downward departure. We held

that "this court should not accept jurisdiction over appeals based on factors which the appellant argues should have influenced the degree of a downward departure," but recognized that a defendant may still appeal a sentence imposed in violation of the law or as a result of an incorrect application of the sentencing guidelines. *Id.* at 1169.

Applying these rules, we find that this court does not have jurisdiction to review the district court's refusal to depart downward from the mandatory minimum sentence to the extent requested by Kapp. Under U.S.S.G. § 5K1.1, a sentencing court may depart downward from the guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense...." In this case, Kapp's mandatory minimum sentence for his offense was 120 months. The government requested that the district court depart downward by 60 months. Ultimately, the court departed downward by 24 months and sentenced Kapp to 96 months.

Kapp argues that this smaller than requested downward departure was based on an incorrect application of the sentencing guidelines. Specifically, he argues that the district court improperly considered numerous arrests in Kapp's past for which he was not convicted. The sentencing court, however, is explicitly allowed to consider such prior criminal conduct in determining the defendant's criminal history score, even where the conduct did not result in a conviction. U.S.S.G. § 4A1.3(a)(2)(E). The district court considered raising Kapp's criminal history category to III but ultimately decided not to do so. Thus, there was no incorrect application of the sentencing guidelines with regard to Kapp's criminal history catego-

ry. The district court made two lengthy statements explaining its rationale for the sentence imposed:

> I am granting the motion, but not to the extent recommended by the government. I am departing below the 120–month statutory minimum, and so Mr. Kapp is getting two years off of his sentence as a result of his cooperation. But I still have serious concerns about the length of his record, past record, the nature of his past record, his behaviors prior to sentence and subsequent to his plea of guilty. All of this indicates to me that he needs a lengthy sentence to drive home the point that he is in a very serious situation here and must turn his life around. I don't think three-and-a-half years actual incarceration is sufficient considering the magnitude of this marijuana distribution group.
>
> . . .
>
> I've got a situation here where over a million dollars was confiscated. This is not some small-time, small level of sales. And you've implied to me that your client was not a methamphetamine user prior to his involvement with law enforcement before the sentencing date. He seems to be the kind of person that will take almost anything that's lying around if you just put the gloss on it that [it's] an illegal substance.
>
> He does have a serious problem, and I think he needs to be in a place where he can't get to any illegal drugs and where he can get treatment.

In sum, Kapp's sentence was below the mandatory minimum. He has presented no evidence of any incorrect application of the sentencing guidelines. His principal argument is that his high level of cooperation entitles him to a greater reduction. For that reason, we have no jurisdiction to review the sentencing judge's discretionary decision to sentence Kapp to a term shorter than the mandatory minimum.

### B. Schneider

■ Schneider argues that the district court erred when it raised his offense level by two points for his role in the offense. At sentencing, the district court raised Schneider's offense level by two points under U.S.S.G. § 3B1.1(c), which allows the sentencing court to increase the defendant's offense level if he was "an organizer, leader, manager, or supervisor in any criminal activity...." The sentencing guidelines provide guidance regarding the type of conduct that will trigger this enhancement. Application Note 4 to U.S.S.G. § 3B1.1 provides:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

As Schneider correctly points out, a sentence should not be enhanced under this provision unless the defendant actually organized, led, managed, or supervised at least one other individual. *United States v. Caseslorente*, 220 F.3d 727, 736 (6th Cir. 2000). It is not enough that the defendant played an important role in the offense. *United States v. Vandeberg*, 201 F.3d 805, 811–12 (6th Cir.2000). Schneider argues

that the district court mischaracterized his relationship with co-conspirator Douglas Hartman. He argues that their relationship was merely a friendship. He asserts that they "were first and foremost friends, and they had been so since they attended elementary school together. Thus, the fact that Hartman may have helped Schneider pick up marijuana deliveries, that Hartman was paid for his assistance, and that Schneider made most of the money should ... be seen in the context of that friendship."

The district court disagreed with Schneider's characterization of the relationship. In applying the § 3B1.1 standard, the district court observed that

> [t]he Probation Officer in the investigation report indicated, and Mr. Hartman personally said at the time of his sentencing, that Mr. Schneider called upon Mr. Hartman to help him safeguard his drug proceeds and act as Mr. Schneider's chauffeur.
>
> Mr. Schneider, by far, claimed the lion's share of proceeds from this drug trafficking conspiracy. He acted as the paymaster. He gave Hartman small sums, in comparison to the substantial revenue generated from the conspiracy. In my opinion, based on what has been adduced in the record, Mr. Hartman acted as Mr. Schneider's employee and Mr. Schneider was Mr. Hartman's manager. I think the two-level increase is appropriate. The record plainly supports that Mr. Schneider was the manager of essentially the entire scheme, so that objection is overruled.

Schneider does not claim on appeal that these findings of fact were clearly erroneous. Rather, he simply disputes what kind of relationship they evidence. However, it is evident that the factors outlined in Application Note 4 are satisfied. The district court's factual findings were not clearly erroneous, and its application of the guidelines to its factual findings was correct. Therefore, it was not error for the district court to raise Schneider's offense level by two points based on this guideline.

Finally, Schneider makes an additional legal argument that the district court erred by relying on Application Note 4 when determining whether he was a supervisor within the meaning of U.S.S.G. § 3B1.1(c). The guideline at issue is divided into three subsections. U.S.S.G. § 3B1.1(a) provides that if a person was an organizer or leader of criminal activity that involved five or more persons or was otherwise extensive, he will receive a four point increase. U.S.S.G. § 3B1.1(b) provides that if a person was a manager or supervisor of such activity he will receive a three point increase. U.S.S.G. § 3B1.1(c) provides that if the defendant was an organizer, leader, manager, or supervisor in any other criminal activity he will receive a two point increase.

Schneider contends that Application Note 4 applies only to subsections (a) and (b), and therefore the district court erred by relying on it to interpret the meaning of "organizer, leader, manager, or supervisor" in subsection (c). Schneider puts forth no authority for this contention. It appears from a plain reading of the provision that the note provides relevant information for the interpretation of all three subsections. Therefore, the district court did not err in relying on it.

## IV.

For these reasons, we find that we have no jurisdiction to consider Kapp's assertion that the district court erred in not departing further below the mandatory minimum sentence. We also affirm the district

court's enhancement of Schneider's sentence for his role in the offense.