HOWARD, Circuit Judge,
concurring in part and concurring in the judgment.
The Supreme Court’s opinions in Booker left many questions unanswered. While my views overlap to' some extent with those of the lead opinion, I write separately to emphasize that sentencing courts are still to accord the guidelines substantial weight and that sentences outside the guidelines sentencing range are reasonable only so long as and only to the extent that they can be said to comport with the Sentencing Reform Act of 1984 (which remains a legitimate expression of congressional purpose post-Boofcer). Moreover, I have come to accept the government’s position that sentences within the guidelines sentencing range are reasonable, absent a claim of error in calculating the range. Certainly, I cannot say that these positions are required by the language of Booker (nor, however, are they inconsistent with that language). But they are, I believe, likely to yield a federal sentencing regime that accords with Congress’s policy preferences. I shall explain briefly, organizing my comments around three propositions that have received less prominent consideration in the post -Booker cases than I think is warranted.
1. “Reasonableness” within the meaning of Booker is not common-law *522 reasonableness; it is “reasonableness in light of Congress’s purposes in enacting the Sentencing Reform Act of 1984.” Booker invalidated a means — guidelines sentences premised on mandatory judicial factfinding — by which Congress sought to achieve its goals with respect to federal sentencing. But it in no way called into question the legitimacy of Congress’s purposes in passing the Act. On the contrary, the primary theme of Justice Breyer’s remedial opinion is that Congress’s purposes were and are valid, and that federal judges should strive to apply the Act (and the regime created by the Act, almost all of which was left intact) to further those purposes. See 125 S.Ct. at 757-59 & 767. Thus, it remains crucial for federal judges to sentence (and to review sentences) with an eye toward what Congress sought to accomplish. Doing so requires an appreciation of the Act’s history and context.
Prior to the Act, federal district court judges had almost unbounded discretion to sentence within statutory limits — a discretion that was largely exempted from appellate review. As a result, federal defendants with similar criminal backgrounds who engaged in similar unlawful conduct could receive vastly different sentences. Congress determined that this lack of uniformity — described in the Act’s legislative history as “astounding,” Comprehensive Crime Control Act of 1984, S.Rep. No. 98-225, at 41, reprinted in 1984 U.S.C.C.A.N. at 3224—was fair to neither defendants nor the public. The result was the Act, which had as a “primary” goal the elimination of unwarranted sentencing disparities. Id. at 52, reprinted in 1984 U.S.C.C.A.N. at 3235; see also Mistretta v. United States, 488 U.S. 361, 363-67, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (discussing the Act and its legislative history).
The Act sought to accomplish this goal in a number of ways. It created an expert Sentencing Commission to collect data and write sentencing guidelines “intended to treat all classes of offenses committed by all categories of offenders consistently.” S.Rep. No. 98-225, at 51, reprinted in 1984 U.S.C.C.A.N. at 3234. It identified explicitly the four purposes a sentencing judge should consider in imposing sentence. See 18 U.S.C. 3553(a)(2)(A)-(D) (the sentence should reflect the seriousness of the offense, afford adequate deterrence, protect the public from the defendant, and provide the defendant with needed vocational training or medical care). It required the Commission to consider these four sentencing purposes in fashioning and periodically revising the guidelines. See S. Rep. 98-225, at 59-60 & 178, reprinted in 1984 U.S.C.C.A.N. at 3242-43 & 3361. It instructed federal judges to sentence within the guidelines unless an aggravating or mitigating circumstance existed that was not adequately considered in the formulation of the guidelines. See id. at 52, reprinted in 1984 U.S.C.C.A.N. at 3235. And it provided the government and defendant with limited rights to appeal to “assure that the guidelines are applied properly and [to] provide case law development of the appropriate reasons for sentencing outside the guidelines.” Id. at 151, reprinted in 1984 U.S.C.C.A.N. at 3334.
The guidelines therefore are not only central to the uniformity that Congress sought to bring about in passing the Act; they also are the data-driven and experience-based manifestations of Congress’s considered views on how, in the usual case, to accomplish the purposes of federal sentencing. Thus, while there surely is more play in the joints following Booker, it would not serve the Act’s purposes to regard the guidelines as merely one factor among many that are relevant in arriving at an appropriate sentence. For the Act’s purposes to be served, the guidelines— which, as matters stand, are the only conceivable centers of gravity around which *523 some semblance of uniformity in federal sentencing might be maintained, and which, again, reflect Congress’s considered judgments about the range of appropriate sentences for federal crimes — must be accorded substantial weight. Otherwise, federal sentencing practices are likely to revert to the free-for-all which marked the pre-guidelines regime. Whether federal judges believe such a system would be better or worse than the guidelines-based system is immaterial. What matters is that such a system would exist only in defiance of the expressed will of Congress.
2. In terms of Congress’s purposes, there is no one “reasonable” federal sentence in a given criminal case; rather, there is a range of “reasonable” sentences which always will include within it the guidelines sentencing range but, post -Booker, may frequently be broader. That a properly calculated guidelines sentence always is “reasonable” in terms of Congress’s purposes may be inferred from the fact that Congress did not give the appellate courts jurisdiction to review challenges to such a sentence. See 18 U.S.C. § 3742(a), (b); United States v. Ruiz, 536 U.S. 622, 627, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (noting the unanimous view of the appellate courts that § 3742(a) does not permit appellate review of arguments that a sentence within a properly calculated guidelines sentencing range was unreasonably high or that the sentencing court abused its discretion in refusing to depart downward); United States v. Tucker, 892 F.2d 8, 10 (1st Cir.1989). The question, then, never has been whether it is lawful to impose a sentence within the properly calculated guidelines sentencing range. The answer to that question always has been “yes.” The question, rather, always has been whether the facts of a particular ease also make it lawful for the sentencing judge to impose a sentence that is outside the properly calculated guidelines sentencing range. Booker doubtless makes it easier to answer that question “yes” as well, so long as the purposes of the Act are not undermined. But Booker did not fundamentally alter the nature of the questions to be asked. See 125 S.Ct. at 765-68.
3. Congress created appellate jurisdiction to ensure that its preferred, more uniform sentencing regime would emerge; it did not create appellate jurisdiction to allow the government or a defendant to challenge a district court’s discretionary determination that a case is sufficiently ordinary to warrant a sentence within the properly calculated guidelines sentencing range. Admittedly, in Booker, Justice Scalia reads Justice Breyer’s remedial opinion to authorize appellate challenges to the reasonableness of sentences imposed within the properly calculated guidelines sentencing range, and Justice Breyer said nothing in response to disabuse him of the notion. Compare 125 S.Ct. at 793-94 (Scalia, J., dissenting in part) with 125 S.Ct. at 766 (Breyer, J., delivering the opinion of the Court in part). I shall leave aside the vexing question how, notwithstanding Justice Breyer’s silence, excision of those portions of the Act which made the guidelines mandatory (which is all that the Booker remedial opinion purports to accomplish) reasonably might be thought to alter the settled meaning of 18 U.S.C. § 3742(a) and (b) and to confer appellate jurisdiction where it did not exist before. See supra at 20-21; see also United States v. Cooper, 437 F.3d 324, 334-340 (3d Cir. Feb.14, 2006) (Aldisert, J., concurring and dissenting) (elaborating with admirable thoroughness the argument that Booker should not be read to resolve whether the courts of appeals have jurisdiction to entertain challenges to sentences within the properly calculated guidelines sentencing range). Although I think the government has the better of the jurisdictional argument, and although I would hold that there still is no right to appeal discretionary decisions to *524 sentence within the properly calculated guidelines sentencing range, the issue is better left to the Supreme Court. In the interim, it does not much matter whether we reject such appeals on jurisdictional grounds or on the merits. Because a sentence within the properly calculated guidelines sentencing range is per se reasonable when “reasonableness” is assessed, not “in the air, so to speak” cf. Palsgraf v. Long Island R. Co., 248 N.Y. 339, 341, 162 N.E. 99 (N.Y.1928) (Cardozo, C.J.) (citation and internal quotes omitted), but in terms of Congress’s purposes, the result is the same either way.
Given the much-publicized dissatisfaction with the guidelines in a number of quarters, it is not surprising that the federal courts have tended to answer the questions left open by Booker in such a way as to return to federal judges some of the powers over federal sentencing that Congress appropriated to itself (or shifted to the executive branch) when it passed the Act. There may be reason to hope that the post -Booker regime will be viewed not only as tolerable, but even as an improvement over guidelines sentencing. But if post -Booker sentencing practices come to be perceived as resembling too much the non-uniform sentencing that gave rise to the guidelines, Congress may well respond with legislation that circumscribes judicial power and discretion even more tightly. And there is for certain good reason to doubt that criminal justice interests would be better served by such a system.