

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-83,014-01

### EX PARTE KENNETH BROUSSARD, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 1451074-A IN THE
### 178TH DISTRICT COURT FROM HARRIS COUNTY

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

I respectfully disagree with this Court's majority opinion that denies post-conviction habeas relief to Kenneth Broussard, applicant. Although I agree with the majority opinion that there are some good reasons to deny applicant relief under these circumstances, I am ultimately more persuaded that, in this close case, the more prudent course is to follow the habeas court's recommendation to grant relief to applicant on the basis that, under the circumstances of this case, his plea was unknowingly and involuntarily made. I, therefore, respectfully dissent.

## I. Background

Applicant was charged with two cases, one for delivery of a controlled substance, namely cocaine, and one for possession of a controlled substance, namely methamphetamine. He entered into a plea bargain for state-jail time on the cocaine delivery case in exchange for the State's dismissal of the methamphetamine case. His judgment for the delivery case shows that the offense for which he was convicted was "delivery of cocaine weighing less than one gram." After he was convicted, the State received a laboratory report that it supplied to him showing that the substance he had delivered did not contain any cocaine and it instead was comprised totally of methamphetamine.

Applicant filed an application for a writ of habeas corpus. In pertinent part, he claimed that he was not aware of the "relevant circumstances" surrounding his plea of guilty and that he would not have pleaded guilty had he known about the negative cocaine results. The State agreed with applicant that he should obtain relief from his conviction and be permitted to withdraw his guilty plea. In joining applicant's request for relief, the State agrees that he has never been guilty of possessing cocaine. The habeas court recommended that this Court grant relief to applicant on the basis that his plea was involuntary and that it violated due process because he did not know that the substance he possessed did not contain cocaine, and thus there was no evidentiary support for the offense for which applicant had been convicted.

## II. Analysis

This case turns on whether the absence of cocaine as indicated in the laboratory report

should be narrowly considered as impeachment evidence, in which case habeas relief should be denied, or whether it should be more broadly considered as evidence undermining the existence of the offense for which applicant was convicted, in which case relief should be granted. I explain my rationale in favor of granting relief by more closely examining *United States v. Ruiz*, 536 U.S. 622 (2002), and *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

In *Ruiz*, the Supreme Court held that the federal Constitution does not require "preguilty plea disclosure of impeachment information," which in that case was "impeachment information relating to informants or other witnesses," and the Court held that Ruiz's plea was not involuntary based on the lack of that disclosure prior to her plea to the offense. *Ruiz*, 536 U.S. at 625, 628-29. The Court discussed three reasons for reaching that conclusion. First, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*." *Id*. at 629. The Court explained that the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it. *Id*.

Second, "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional

rights, despite various forms of misapprehension under which a defendant might labor." *Id*. at 630. The Court explained that it is difficult to distinguish, in terms of importance, (1) a defendant's ignorance of grounds for impeachment of potential witnesses at a possible future trial from (2) the varying forms of ignorance at issue in these cases. *Id*.

Third, due process considerations did not weigh in favor of pre-plea disclosure. *Id*. at 631. The Court discussed due process considerations including (1) the nature of the private interest at stake, (2) the value of the additional safeguard, and (3) the adverse impact of the requirement upon the Government's interests. *Id*. The Court explained that the issue in that case was impeachment evidence and that the government had agreed to otherwise reveal "'any information establishing the factual innocence of the defendant' regardless." *Id*. This distinction between mere impeachment evidence and factual innocence was important to the Court. *See id*. It indicated that the fact that the government agreed to reveal pre-plea information establishing the factual innocence of the defendant "diminishes the force of Ruiz's concern that, in the absence of impeachment information, innocent individuals, accused of crimes, will plead guilty." *Id*. Furthermore, the Court considered the State's interest in the premature disclosure of witness information that could disrupt ongoing investigations and expose prospective witnesses to serious harm. *Id*. at 631-32. The Court weighed the "comparatively small [] constitutional benefit" of revealing mere impeachment evidence that did not implicate factual innocence of a defendant against the harm that might occur from forcing the government to abandon its general practice of not disclosing to a

defendant pleading guilty information that would reveal the identities of cooperating informants, undercover investigators, or other prospective witnesses and any possible decrease in the number of cases routinely resolved through the plea bargaining process. *Id*. The Court concluded by stating, "These considerations, taken together, lead us to conclude that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id*. at 633.

As I show in discussing each of the Supreme Court's three reasons for its conclusion in *Ruiz*, the rationale for denying relief to Ruiz does not squarely apply to the facts in this case. *See id*. First, although it is true that impeachment information is special in relation to the fairness of a trial, rather than with respect to whether a plea is voluntary, that begs the question whether the type of evidence at issue in this case should be properly considered impeachment evidence. This is a closer call than it may initially appear. On the one hand, applicant did deliver a controlled substance, and thus he was factually guilty of delivery of a controlled substance, and one could rationally argue that the type of controlled substance that he possessed should be considered mere impeachment evidence. On the other hand, applicant did not possess any controlled substance of the kind that he was convicted of possessing. Thus, applicant was factually innocent of delivery of cocaine, the offense he had been charged with and convicted for in the judgment.

In *Mable*, this Court granted habeas relief to Mable, who had pleaded guilty to possession of a controlled substance, but laboratory testing conducted after the plea revealed

that the substance he was arrested for possessing did not actually contain any illicit materials. *See Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). This Court granted habeas relief, explaining that all the parties involved "incorrectly believed [that Mable] had been in possession of drugs. This fact is crucial to this case, and while operating under such a misunderstanding, [Mable] cannot be said to have entered his plea knowingly and intelligently." *Id.* Here, similar to *Mable*, applicant pleaded guilty to delivery of a controlled substance, cocaine, but the laboratory testing conducted after the plea revealed that the substance that he was arrested for delivering did not actually contain any cocaine. *See id.* The instant case is unlike *Mable*, however, because Mable did not possess any illicit materials of any kind, but here applicant did possess an illicit material, methamphetamine. *See id.* I conclude that this difference between *Mable* and the instant case may or may not result in an unknowing and involuntary plea depending on the circumstances of the plea. Because cocaine and methamphetamine are in the same penalty group, it would appear that, in some cases, the facts may demonstrate that it is immaterial to a defendant's plea to delivery of a controlled substance whether he delivered cocaine or methamphetamine. In this case, however, there is no factual dispute that the laboratory results affected applicant's decision to plead guilty because the parties agree and the trial court found that these facts demonstrate that the discrepancy about the type of illicit material did affect the voluntariness of applicant's plea. The amount and strength of the evidence has been recognized as a proper basis for deciding to plead guilty, and those matters may affect whether a plea was

involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37-38 (1970) (holding that a defendant may choose to plead guilty due to the quality and quantity of the State's evidence against him even while believing himself innocent). In this case, applicant, the State, and the trial court apparently agree that, under the facts in this case, applicant would not have pleaded guilty to delivery of cocaine had he been made aware of the laboratory report that showed that the substance was instead methamphetamine. Because I would defer to what essentially amounts to stipulated facts that were found credible by the trial court that determined that applicant's plea was unknowing and involuntary in this case, I would consider the negative results for cocaine to be more than mere impeachment evidence under the circumstances of this particular applicant's case.

In contrast, applying the second rationale underlying the Supreme Court's decision in *Ruiz* to the instant case weighs in favor of denying relief to applicant. *Ruiz*, 536 U.S. at 630. As discussed above, the Constitution does not require complete knowledge of the relevant circumstances, and this rationale would appear to favor denying relief. *Id*. After all, in this case, applicant was charged with delivery of cocaine and possession of methamphetamine, and he did in fact possess methamphetamine. There is a fair argument that his unawareness that the laboratory report did not reveal that he delivered cocaine was the type of lack of complete knowledge of relevant circumstances that the Supreme Court relied on to deny relief in *Ruiz*. *See id*. I conclude that the second rationale underlying *Ruiz* would weigh in favor of denying relief to applicant.

Third, in assessing the due process considerations that may be affected in this case, which in particular examine the value of the additional safeguard and the adverse impact on the State, I conclude that those weigh in favor of granting relief to applicant. *See id*. at 631. Here, there is a reasonable argument that the fact that applicant did not possess the illicit material that he was convicted of possessing is "'information establishing the factual innocence of the defendant' regardless," which the Supreme Court noted would still have to be revealed to a defendant pre-plea. *Id*. The Supreme Court denied relief to Ruiz, in part, because the type of information at issue in that case was not of the variety that would raise a concern that "innocent individuals, accused of crimes, will plead guilty." *Id*. Here, in contrast, there is a reasonable concern that the type of evidence at issue here could cause an innocent individual to plead guilty. Applicant was charged with delivery of cocaine and possession of methamphetamine, and even though he was factually innocent of delivering cocaine, he pleaded guilty to that offense.[1]

Another due process concern considered by the Court in *Ruiz* weighed the "comparatively small [] constitutional benefit" of revealing mere impeachment evidence against the harm to the government. *Id.* at 632. In contrast, here, the State joins applicant's

---

[1] In contrast, it may be that a different defendant under identical facts might reasonably decide to plead guilty to delivery of cocaine even though a laboratory report would later show that he did not have cocaine, because in exchange for that plea of guilty to that offense, he received a good plea deal for a low sentence for that offense and a dismissal of an additional charge for possession of methamphetamine, a substance that a laboratory report would later show that he did actually possess. Thus, how a court assesses the importance of the type of substance on a defendant's decision to plead guilty likely impacts whether a defendant's plea was knowing and voluntary.

request that this Court grant relief to applicant because it determines that this would be in the State's interest. The State explains that it has "a vested interest in maintaining the integrity of its convictions and the accuracy of its crime reporting [and a]llowing convictions that are known to be wrongful, or at the very least inaccurate, to remain on the books does not further this interest." Unlike *Ruiz*, the State is apparently unconcerned that this type of relief would negatively affect its ability to secure plea bargains in other cases. And the State has no other concerns, as in *Ruiz*, that there are more compelling competing interests, such as the safety of informants or undercover officers that should be considered.

Taking all of the considerations underlying the Supreme Court's decision in *Ruiz*, I conclude that, in this case, habeas relief is appropriate. The laboratory report showing an absence of cocaine may rationally be considered as evidence of innocence of the offense for which applicant was convicted. The State agrees with applicant that he should obtain relief from his conviction on the basis that his plea was unknowing and involuntary under the facts of this case. The trial court agrees with applicant and the State that his plea was unknowing and involuntary. Having examined the rationale underlying the Supreme Court's decision in *Ruiz*, I am more persuaded that relief is appropriate in this case than I am that it should be denied.

### III. Conclusion

Given that the underlying rationale in *Ruiz* and *Mable* generally supports granting relief in this case, and given that the applicant, the State, and the habeas court jointly

recommend that this Court grant relief to applicant, I would grant relief to applicant. I, therefore, respectfully dissent.

Filed: April 12, 2017

Publish