# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 16, 2024

Lyle W. Cayce
Clerk

———————

No. 23-10078

———————

Susan Neese; James Hurly,

*Plaintiffs—Appellees*,

*versus*

Xavier Becerra, *in his official capacity as Secretary of Health and Human Services*; United States of America,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:21-CV-163

———————————————————————

Before Jones, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:

Dr. Susan Neese and Dr. James Hurly ("Plaintiffs") brought a pre-enforcement challenge to the Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972 ("Notification"), which was issued by the Department of Health and Human Services ("HHS") in May 2021. The district court granted summary judgment for Plaintiffs. Because Plaintiffs lack Article III standing, we VACATE the district court's judgment and REMAND with instructions to dismiss Plaintiffs' claims for lack of jurisdiction.

5

No. 23-10078

The Notification at issue states that "[c]onsistent with the Supreme Court's decision in Bostock[1] and Title IX, beginning today, OCR will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex[2] to include: (1) [d]iscrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity." Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27984, 27985 (May 25, 2021) (to be codified at 45 C.F.R. pts. 86, 92). Plaintiffs filed this case in August 2021 to challenge the Notification.

Both Plaintiffs are doctors in Amarillo, Texas. Dr. Neese practices general internal medicine for patients from age 16 to 105 years old. Dr. Hurly is a pathologist who diagnoses patients based on laboratory analyses. They both claim to be "unwilling to provide gender-affirming care, in at least some situations, to patients who assert a gender identity that departs from their biological sex."[3] For Dr. Neese, these situations include: (1) her categorical unwillingness to assist minors with transitioning or prescribe them puberty blockers or hormone therapy (which she explained is not within her medical specialty); and (2) her insistence that transgender patients or patients with gender dysphoria obtain preventive care consistent with their biological sex, such as a biological female who identifies as a man (but whose body remains female) undergoing a pelvic examination to check for cervical or ovarian cancer. For Dr. Hurly, these situations include informing a biological male who identifies as a woman of her prostate cancer diagnosis and need for

_____

[1] *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020).

[2] *See* 42 U.S.C. § 18116(a); 20 U.S.C. § 1681(a).

[3] The parties agree that Plaintiffs only assert an injury caused by the portion of the Notification that prohibits discrimination based on gender orientation.

treatment. Put another way, the doctors want to be sure that the physical bodies of their patients are cared for properly.

Neither Plaintiff believes that their medical practices constitute gender-identity discrimination. However, they are fearful that HHS will view their practices as violating the Notification. Plaintiffs fear that HHS will bring an enforcement proceeding against them and terminate their federal funding if they do not "provide everything a transgender patient might demand" (even if it is not doable in their body) or "unconditionally play along with a patient's asserted gender identity." The Government disagrees with the assertion that it would prosecute a doctor who, under the circumstances presented in this case, treated a biological male or female according to the medical needs of the physical body.

We always have jurisdiction to determine jurisdiction. *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Questions of standing are reviewed de novo. *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 236 (5th Cir. 2010). In order to have standing, a plaintiff must have suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation omitted). The right to pre-enforcement review is qualified and permitted only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *see Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021).

Plaintiffs have not met their burden to establish standing in this case because they have not shown how their conduct constitutes gender-identity discrimination under any plausible reading of the Notification. Plaintiffs themselves do not view their conduct as gender-identity discrimination, nor do they offer any evidence that HHS will view it as such. They have valid, non-discriminatory reasons for their medical practices, including that acting

otherwise would be malpractice or would require them to provide services outside of their specialty areas. Lastly, their current practices have not been chilled or otherwise affected, and there is no evidence that an enforcement proceeding is imminent. *Cf. Braidwood Mgmt. Inc. v. EEOC*, 70 F.4th 914, 929 & n.27 (5th Cir. 2023) (holding plaintiffs had standing to bring pre-enforcement challenge where the EEOC previously brought an enforcement action under similar circumstances).

Plaintiffs have thus failed to show that they are actually violating the Notification, much less that they face a credible threat of enforcement. They therefore do not have standing.[4] Accordingly, we VACATE the district court's judgment and REMAND with instructions to dismiss Plaintiffs' claims for lack of jurisdiction.

---

[4] Among other things, the Government challenged the district court's conclusion that the Notification was a final agency action and that *Bostock*, 140 S. Ct. at 1754, where the Supreme Court held that Title VII's ban on discrimination "because of . . . sex" prohibits an employer from firing an employee because that employee is homosexual or transgender, does not apply to Title IX or § 1557 of the Affordable Care Act. Because we conclude Plaintiffs lack standing, we do not reach the other issues raised in this appeal.

23-10078

Edith Hollan Jones, concurring:

Based on representations by counsel for the government during oral argument and in brief, I concur in dismissing plaintiffs' case for lack of Art. III standing. I agree with the majority's conclusions that the plaintiffs "do not view their conduct as gender-identity discrimination" because each of them treats patients who "identify" as members of the opposite sex. Further, as we hold, "[t]hey have valid, non-discriminatory reasons for their medical practices." I would add that the government readily affirms the plaintiffs are not facing any "credible threat" of prosecution for treating biological men or women according to their physical characteristics. See *Whole Woman's Health v. Jackson*, 142 S.Ct. 522, 536 (2021). Nor do they face any credible threat of prosecution for failing to treat patients inconsistent with their medical training and practice specialties.

Specifically, HHS judicially admits and confirmed at oral argument that "[P]laintiffs do not explain how a medical provider's care based on a transgender patient's physiological sex characteristics could be considered gender-identity discrimination, and HHS has never taken the position that such conduct constitutes gender-identity discrimination." HHS further acknowledges that the proposed rule interpreting section 1557 [the rule was stayed before it took effect] would not "'prohibit a covered entity from treating an individual for conditions that may be specific to their sex characteristics,' such as treating a transgender man with a pregnancy test." [citing 87 Fed. Reg. at 47,866]. HHS also reaffirmed at oral argument that "nothing in Section 1557 has ever been taken to mean that a physician must provide services outside their [sic] area of specialty." In sum, nothing in the briefing or argument by HHS implies that the plaintiffs faced a credible threat of investigation or losing federal funds based on their described medical practices.