DISCIPLINARY COUNSEL *v*. KELLOGG-MARTIN.

[Cite as *Disciplinary Counsel v. Kellogg-Martin*,

124 Ohio St.3d 415, 2010-Ohio-282.]

*Criminal procedure — Attorneys at law — Discovery — Prosecutor's ethical and legal duty to disclose exculpatory information — No violations found — Disciplinary complaint dismissed.*

(No. 2008-1771 — Submitted December 16, 2008 — Decided February 4, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-069.

_____

**Per Curiam**.

{¶ 1} Respondent, Kimberly J. Kellogg-Martin of Bellefontaine, Ohio, Attorney Registration No. 0022083, was admitted to the practice of law in Ohio in 1984. The Board of Commissioners on Grievances and Discipline found that respondent had violated the Disciplinary Rules of the former Code of Professional Responsibility by failing to disclose, and by making false statements about, potentially exculpatory or mitigating evidence during a criminal prosecution. The board recommends that we suspend respondent from practice for one year, but conditionally stay the last six months of the suspension. Respondent objects to the board's findings and recommendation. Because we find that several objections have merit and that respondent's acts and omissions did not constitute professional misconduct, we dismiss the complaint.

### The Disciplinary Proceedings against Respondent

{¶ 2} Relator, the Disciplinary Counsel, charged respondent in a single-count complaint with violating DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-

102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice), 7-102(A)(3) (prohibiting a lawyer, in the representation of a client, from concealing or knowingly failing to disclose that which she is required by law to reveal), and 7-103(B) (requiring a prosecutor to make timely disclosure to defense counsel of the existence of evidence known to the prosecutor that tends to negate the guilt of the accused, mitigates the degree of the offense, or reduces the punishment). A panel of the board heard the case, including the parties' stipulations, and found the disciplinary violations alleged in the complaint. The panel recommended a six-month suspension with the entire six months to be stayed. The board adopted the panel's findings of fact and conclusions of law, but recommended a one-year suspension with six months stayed.

{¶ 3} The following facts were established at the disciplinary hearing:

{¶ 4} Respondent was the chief assistant prosecuting attorney of Logan County. In 2002, she was assigned to prosecute criminal charges against Joshua Giles. These charges were based upon a young girl's allegations that Giles had forced her to have sex on two separate occasions.

{¶ 5} In June 2002, the victim, then 14 years old, was in counseling for behavioral problems. During a counseling session, she told her therapist that Giles had twice pressured her into sexual intercourse. Her therapist reported the allegation, as is required by statute.

{¶ 6} On June 12, 2002, Jo Ann Dorsey, a Logan County Children Services ("LCCS") social worker, interviewed the victim. Later that day, Dorsey wrote a narrative report of the interview ("the Dorsey report"). According to the Dorsey report, with respect to the crucial fact of the victim's age, the victim stated that the first rape had been committed at the home of a friend of the victim in August 2001 and that the second rape had been committed at the residence of one "Haddy" in September 2001. The victim's date of birth was January 21, 1988.

Thus, Dorsey's initial account of the victim's statements implied that the victim was 13 years old at the time she was raped. On July 19, 2002, however, Dorsey filled out a form called the "Family Risk Assessment Matrix." On this form, Dorsey stated that the victim "reported she was raped by a 21 year old man when she was 12 years old."

{¶ 7}   On June 13, 2002, Dorsey faxed a copy of her report to Detective Sergeant Jeff Cooper in the Logan County Sheriff's Office. Cooper interviewed Giles the same day, and Giles admitted to having sex with the victim at her friend's house. Giles said this had happened a "very long" time ago, around the "[e]nd of 2000."

{¶ 8}   Cooper and another officer interviewed the victim on July 3, 2002. According to Cooper's narrative report ("the Cooper report"), the victim told the officers that "she had intercourse with [Giles] on two occasions * * * when she was twelve years old." The Cooper report also states that the victim "stated that she did not tell [Giles] to stop or try to fight him during the incidents of intercourse."

{¶ 9}   The discrepancy between Dorsey's June 12 report that the victim was 13 and the other information that she was 12 prompted respondent to seek further confirmation of the victim's age before filing criminal charges. Respondent therefore interviewed the victim personally. During the interview, the victim stated that before one of the rapes, she had informed Giles that she was 12. The victim also told respondent that she had been in a snowmobile accident and that the rapes had occurred the summer *before* that accident. After the interview, respondent checked the victim's hospital records. These confirmed that the snowmobile accident had taken place in December 2000.

{¶ 10} Respondent also interviewed the victim's mother. From this interview, respondent learned that the victim had told her mother about being

raped. The victim's mother told respondent that the victim had been 12 at the time of that conversation.

{¶ 11} On August 28, 2002, the victim told her therapist that one of the sexual acts had occurred on a Labor Day weekend "when she was 12."

{¶ 12} Giles was ultimately indicted on four counts of raping a person under the age of 13, R.C. 2907.02(A)(1)(b), and two counts of raping a person under the age of 13 by force or threat of force, R.C. 2907.02(A)(1)(b) and 2907.02(A)(2). Each of these charges required the prosecution to prove that the victim was younger than 13 at the time of the alleged rapes.

{¶ 13} After Giles was indicted, his attorney filed a discovery demand requesting, inter alia, "all evidence, known or which may become known to the Prosecuting Attorney, favorable to defendant, and material either to the guilt or innocence of the defendant." Respondent did not provide defense counsel with copies of either the Dorsey report regarding the age statement or the Cooper report concerning consent. Respondent later testified that she believed she did not have a duty under Crim.R. 16 or *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, to turn these reports over to the defense.

{¶ 14} On September 23, 2002, respondent filed a bill of particulars in the Giles prosecution. The bill contained the following statement: "The victim was interviewed by Joanie Dorsey of Logan County Children's Services on June 12, 2002. She reported that the Defendant raped her on two occasions over the summer of 2000."

{¶ 15} On December 18, 2002, Giles entered a plea of guilty to a reduced charge of unlawful sexual conduct with a minor, R.C. 2907.04(A). At the hearing, respondent delivered a statement of what "[t]he State's evidence in this case would show." During this statement, respondent said: "The victim was interviewed by Joanie Dorsey of the Logan County Children's Services on June 12, 2002. She reported what had taken place over the year of 2000."

4

{¶ 16} The board found that respondent violated DR 7-103(B) and 7-102(A)(3) by failing to disclose the Dorsey and Cooper reports to the defense before Giles entered his guilty plea.  The board further found that respondent's nondisclosure of the reports was prejudicial to the administration of justice and thus violated DR 1-102(A)(5).  Finally, the board found that respondent's statements in the bill of particulars and the plea hearing were false and therefore violated DR 1-102(A)(4).

### Respondent's Objections to the Board's Report

{¶ 17} Respondent has filed seven objections to the board's report and recommendations.  Her first five objections challenge the board's findings that she violated DR 7-103(B), 7-102(A)(3), and 1-102(A)(5) by failing to disclose the Dorsey and Cooper  reports.  Her sixth challenges the board's finding that she made false statements to the trial court in violation of DR 1-102(A)(4).  Her seventh challenges the sanction recommended by the board.  We begin our analysis with the issues raised by respondent's nondisclosure of the reports.

*Nondisclosure of the Dorsey and Cooper Reports*

{¶ 18} DR 7-103(B) provides: "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."

{¶ 19} Respondent's first two objections are related.  In her first objection, she argues: "It cannot be the intent of the Code of Professional Responsibility * * * that a prosecutor's ethical duties are broader than her legal duties."  Therefore, she contends, a prosecutor cannot violate DR 7-103(B) by failing to disclose evidence unless her failure to disclose also constitutes a violation of Crim.R. 16 or of *Brady v. Maryland*, supra.  In her second objection, respondent contends that she had no legal duty to disclose the Dorsey and Cooper

reports to the defense and hence that she committed no violation of DR 7-103(B) by failing to disclose them.

{¶ 20} Relator, on the other hand, contends that we should read DR 7-103(B) broadly, to require disclosure of evidence irrespective of whether its disclosure is legally required or not. Relator further contends that even if we reject relator's interpretation of DR 7-103(B), respondent's failure to disclose the reports did in fact violate *Brady* and Crim.R. 16 and therefore still constituted a violation of DR 7-103(B).

{¶ 21} We decline to construe DR 7-103(B) as requiring a greater scope of disclosure than *Brady* and Crim.R. 16 require. Relator's broad interpretation of DR 7-103(B) would threaten prosecutors with professional discipline for failing to disclose evidence even when the applicable law does *not* require disclosure. This would in effect expand the scope of discovery currently required of prosecutors in criminal cases.

{¶ 22} For this reason, we hold that DR 7-103(B) imposes no requirement on a prosecutor to disclose information that he or she is not required to disclose by applicable law, such as *Brady v. Maryland* or Crim.R. 16. Accordingly, we sustain respondent's first objection.

{¶ 23} In respondent's second objection, she contends that she had no duty to disclose the Dorsey and Cooper reports to the defense. Therefore, she contends, her failure to do so did not violate DR 7-103(B). In the circumstances of this case, we agree with respondent's contention that she had no duty to disclose the reports.

{¶ 24} In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Likewise, Crim.R. 16(B)(1)(f)

requires that a prosecutor "disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment."

{¶ 25} However, in *United States v. Ruiz* (2002), 536 U.S. 622, 633, 122 S.Ct. 2450, 153 L.Ed.2d 586, the United States Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."

{¶ 26} The Dorsey and Cooper reports constituted impeachment evidence. Had the case against Giles gone to trial, the defense could not have introduced the victim's out-of-court statements to Dorsey and Cooper to prove the truth of the matters asserted in those statements (i.e., that the rapes occurred in 2001 or that the victim did not offer resistance). See generally Evid.R. 801(C) and 802. Thus, the defense could have used the victim's statements only to impeach her testimony at trial with respect to these matters. See generally Evid.R. 613 (impeachment by self-contradiction).

{¶ 27} Relator's efforts to distinguish *Ruiz* are unpersuasive. Relator argues that "the focus in this case is *not* on the validity of Giles' plea agreement, the focus is on evidence withheld by respondent *before* Giles decided to plead guilty." (Emphasis sic.) Relator's observation is true, but irrelevant. This case is indeed about the "evidence withheld by respondent." But the question before us is whether respondent had any obligation to disclose that evidence before Giles entered his guilty plea. *Ruiz* answers that question in the negative.

{¶ 28} Next, relator points out that Giles, unlike the defendant in *Ruiz*, "was not asked to sign any type of waiver of his right to receive 'impeachment information relating to any informants or other witnesses' in exchange for favorable sentencing." It is true that the defendant in *Ruiz* was *asked* to specifically waive the right to receive impeachment information. That is, he was offered a plea bargain whose terms included a specific waiver of the right to

7

receive impeachment information. But relator omits one critical fact: the defendant in *Ruiz refused* that bargain and later pleaded guilty *without* making any such specific waiver. 536 U.S. at 625-626, 122 S.Ct. 2450, 153 L.Ed.2d 586. The only waiver the defendant actually made in *Ruiz* was the same waiver that any criminal defendant – including Giles – *necessarily* makes by pleading guilty: "When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *Ruiz*, 536 U.S. at 628-629.

{¶ 29} *Ruiz* plainly holds that the state is not required to disclose impeachment evidence to a defendant before the defendant pleads guilty. Because Giles entered a guilty plea and never went to trial, respondent had no obligation to disclose the Dorsey and Cooper reports to him. We must therefore sustain respondent's second objection.

{¶ 30} As we find that respondent did not violate DR 7-103(B), we need not determine whether, as she contends in her third objection, a finding of willfulness is a prerequisite to a finding of a DR 7-103(B) violation. Respondent's third objection is moot.

{¶ 31} Respondent's fourth objection challenges the board's finding that nondisclosure of the reports violated DR 7-102(A)(3). DR 7-102(A)(3) prohibits a lawyer's failure to disclose information that she is *required by law* to reveal. Under *Ruiz*, respondent had no obligation to disclose the Dorsey and Cooper reports to the defense. Accordingly, we sustain respondent's fourth objection.

{¶ 32} Respondent's fifth objection challenges the board's finding that respondent engaged in conduct prejudicial to the administration of justice in violation of DR 1-102(A)(5). In finding that respondent violated DR 1-102(A)(5), the board relied on the same evidence and analysis that underlay its findings that respondent violated DR 7-103(B) and 7-102(A)(3). Having rejected

those findings, we must also reject the finding that respondent violated DR 1-102(A)(5). We therefore sustain respondent's fifth objection.

{¶ 33} Our decision today should not be construed as an endorsement of respondent's nondisclosure of the reports. "Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." *United States v. Agurs* (1976), 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342. Nevertheless, we conclude that nondisclosure of the reports at issue here did not violate any Disciplinary Rule.

*The Claim that Respondent Made False Statements*

{¶ 34} In her sixth objection, respondent challenges the board's conclusion that she violated DR 1-102(A)(4). The board's conclusion was based on two statements respondent made in connection with the prosecution of Giles. First, the bill of particulars filed by respondent on September 23, 2002 states: "The victim was interviewed by Joanie Dorsey of Logan County Children's Services on June 12, 2002. *She reported* that the Defendant raped her on two occasions *over the summer of 2000*." (Emphasis added.)

{¶ 35} Second, at the plea hearing on December 18, 2002, respondent stated in open court: "The victim was interviewed by Joanie Dorsey of the Logan County Children's Services on June 12, 2002. *She reported* what had taken place *over the year of 2000*."

{¶ 36} Relator contends that both statements were false, in that they misrepresented what the victim actually reported to Dorsey on June 12, 2002. Relator further contends that the alleged falsehoods must have been intentional, inasmuch as respondent was in possession of Dorsey's June 12, 2002 report stating that the victim had placed the sex acts in 2001.

{¶ 37} We find that relator has failed to prove that respondent's statements in the bill of particulars and at the sentencing hearing were false. It is true that Dorsey's narrative report of June 12, 2002, is inconsistent with respondent's statements. The Dorsey report states that the victim, when asked whether she had been raped "last year," i.e., in 2001, said yes and that the victim "reports the first rape occurred in August 2001." But respondent's statements were not representations about what *Dorsey's report* said. They were representations about what the *victim* said to Dorsey on June 12, 2002. And the June 12 Dorsey report is not the only version of what the victim told Dorsey on that date.

{¶ 38} On June 19, 2002, Dorsey completed a "Family Risk Assessment Matrix" form for the victim. Dorsey wrote on this form that the victim "*reported* she was raped by a 21 year old man *when she was 12 years old*." (Emphasis added.) In the absence of any evidence that Dorsey interviewed the victim at any time other than June 12, 2002, we must conclude that the statement on the June 19 risk-assessment form refers to the victim's statements to Dorsey on June 12.

{¶ 39} Thus, if Dorsey's statement on the June 19 risk-assessment form is correct, then so were respondent's statements about what the victim reported to Dorsey on June 12, 2002. Relator, who has the burden of persuasion, cites no evidence that supports Dorsey's June 12 version of the victim's statement as opposed to her June 19 version. Nor does the board's report cite any such evidence.

{¶ 40} Indeed, the evidence points the other way. The victim told her mother, her therapist, and Sergeant Cooper that she was 12 at the time of the alleged rapes. Respondent determined that further investigation was needed, so she interviewed the victim herself. Yet again, the victim's account indicated that she was 12 when Giles raped her.

**{¶ 41}** Given that *all* the victim's other statements were consistent as to when she was raped, we find it more likely than not that the June 19 risk-assessment form, and *not* the earlier Dorsey report, accurately reflected *what the victim told Dorsey* on June 12, 2002.

**{¶ 42}** In sum, we find that respondent did not, either in the September 23, 2002 bill of particulars or during the December 18, 2002 plea hearing, engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. We therefore conclude that respondent did not violate DR 1-102(A)(4), and we accordingly sustain respondent's sixth objection.

### *The Proposed Sanction*

**{¶ 43}** Respondent's seventh objection is to the sanction recommended by the board. However, as relator has failed to prove any misconduct, this objection is moot.

### Conclusion

**{¶ 44}** We find that relator has failed to establish that respondent violated the Disciplinary Rules she was charged with violating. Accordingly, we dismiss relator's complaint.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., dissents.

_____

**MOYER, C.J., dissenting.**

**{¶ 45}** I respectfully dissent from the majority opinion. I disagree with the proposition that DR 7-103(B) is, or should be, limited by Crim.R. 16(B)(1)(f) and the corresponding constitutional analysis. The majority opinion disregards the plain language and purposes of the former Code of Professional Responsibility and the Rules of Criminal Procedure. Additionally, I disagree with

the majority's inclination to reweigh the evidence in order to reject the board's finding of violations of DR 1-102(A)(4). I would adopt the sanction recommended by the board of a 12-month suspension with six months stayed.

### The misconduct

{¶ 46} Respondent prosecuted a rape case in which the severity of the offenses was based upon the age of the victim. In evaluating the case for trial, respondent determined that overwhelming evidence supported her view that the crimes occurred in 2000, when the victim was 12 years old. However, respondent possessed two reports—one generated by the county's children's services agency and one by the sheriff's office—both of which indicated that the victim had reported that the crimes occurred in 2001. Respondent, in her professional judgment and based upon her research, viewed the dates in these reports as inaccurate and therefore unreliable and concluded that the crimes had actually occurred in 2000, when the victim was 12 years old. Therefore, respondent elected to pursue charges for rape of a person under 13 years of age against the defendant.

{¶ 47} The defendant was charged with four counts of rape of a person under the age of 13 in violation of R.C. 2907.02(A)(1)(b) and two counts of rape of a person under the age of 13 by use of force or threat in violation of R.C. 2907.02(A)(1)(b) and (A)(2). All of the offenses were first-degree felonies. The R.C. 2907.02(A)(1)(b) charges for rape of a person under 13 years of age carried potential sentences of three to ten years (under former R.C. 2929.14(A)(1)). The R.C. 2907.02(A)(1)(b) and (A)(2) charges for rape of a person under 13 years of age by force or threat carried life sentences (under former R.C. 2907.02(B)). Had the victim been 13 years of age, then the life sentence would not have been an available punishment and the longest sentence that the defendant would have faced would have been ten-year sentences for the remaining first-degree rape charges.

12

{¶ 48} Thus, the age of the victim was relevant to the potential length of incarceration, with a maximum life sentence available if the victim was under 13 years of age. Moreover, the timeline of events was important to the state's case because in order to prove the crimes charged, the state needed to show that the offenses occurred in 2000, when the victim was 12 years old.

{¶ 49} In responding to the defendant's discovery request, respondent decided to withhold from the defendant the two reports containing the 2001 dates given by the victim. Later, in the bill of particulars, respondent described the two interviews of the victim but stated, without qualification, that the victim reported that she had been raped on two occasions in 2000. By implication, the bill of particulars asserted that the defense would not find any exculpatory material in the reports themselves.

{¶ 50} Respondent completed her gloss on the evidence at the defendant's plea hearing. During that hearing, respondent stated to the court that the victim had been interviewed by a therapist and by a children's services employee and that the victim reported that the crimes occurred in 2000.

{¶ 51} Thus, the defense did not have these reports to review and could not have noted the inconsistency between the dates in the reports and those inherent in the charges against him. Based on respondent's statements reported in the bill of particulars and at the plea hearing, the defendant had no reason to know that the reports contained information relating to his guilt on the charges against him.

### The effect of the majority decision

{¶ 52} Respondent was faced with inconsistent evidence, evidence that the defense could have used at the least to challenge the credibility of the victim and at the most to undermine the assertion regarding the victim's age in the

charges against the defendant.[1] Yet she was obliged to respond to the defendant's discovery requests.

{¶ 53} In doing so, respondent chose to withhold the reports and not reveal the inconsistencies contained within them. Respondent did not provide the reports during discovery and misstated the contents of those reports in the bill of particulars and to the court during the plea hearing.

{¶ 54} Respondent admits that she knew of the inconsistencies in the reported statements of the victim with the timeline asserted by the state but claims that (1) the reports need not have been provided to the defense under the Code of Professional Responsibility because they were not subject to disclosure under Crim.R. 16(B)(1)(f) and *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and (2) the statements in the bill of particulars and the statements made during the plea hearing did not constitute breaches of respondent's professional responsibilities, because she made the statements in good faith and in her professional judgment on the belief that the facts and evidence supported them.

{¶ 55} The effect of the majority opinion is to adopt respondent's position on the obligations of a prosecutor. Thus, the prosecutor does not violate the Code of Professional Responsibility unless she has violated the defendant's fair-trial discovery rights under the Due Process Clause of the United States Constitution and the attendant Rules of Criminal Procedure. And the prosecutor may misrepresent the contents of relevant written reports to the defense and the court, so long as the misrepresentation does not rise to the level of a deprivation of

---

1. The majority asserts that the statements were hearsay and could therefore be used by the defendant only to challenge the credibility of the declarant. However, that is not an issue before us. Further, the defense was not given the opportunity to explore the veracity of the statements and was denied the ability to pursue avenues of defense preparation that could have resulted. And the defense was not aware of the potential weaknesses in the state's case. Thus, it is not completely accurate to say that the only use for the reports of the victim's inconsistent statements would have been as impeachment evidence.

constitutional rights and she misrepresents them in a way that is consistent with her good-faith view of the evidence.

{¶ 56} The majority goes one step further and holds that so long as the case ends with a plea, DR 7-103(B) cannot be violated at all.

{¶ 57} The board did not, and I too cannot, agree that the rules of professional conduct permit such an outcome.

### DR 7-103(B) requires more of the prosecutor than the
### related rule of criminal procedure

{¶ 58} The board found that respondent violated DR 7-103(B), 7-102(A), and 1-102(A)(5) by failing to disclose the two reports. The violations of DR 7-102(A) and 1-102(A)(5) flow from the finding of the board that respondent violated DR 7-103(B). Therefore, I limit my discussion to DR 7-103(B).

{¶ 59} The majority holds that the disclosure requirements placed upon a prosecutor by DR 7-103(B) are limited in scope to the requirements of Crim.R. 16(B)(1)(f). Accordingly, the majority holds that if Crim.R. 16(B)(1)(f) is not violated, then, a fortiori, DR 7-103(B) is not violated.

{¶ 60} Because the disciplinary rule differs from the related rule of criminal procedure in plain language and purpose, I disagree. I would hold that the disciplinary rule requires more of a prosecuting attorney than does the rule of criminal procedure. Such a holding would not require "open discovery" as the majority fears. Moreover, I find that *United States v. Ruiz* (2002), 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586, does not control this case. *Ruiz* concerned the constitutional right to a fair trial and the waiver of that right by a defendant when he executed a plea; this case concerns the rules of conduct governing prosecutors when they possess evidence favorable to the defense. The holding of *Ruiz* has no bearing on the question of the professional conduct of a prosecuting attorney.

*The plain language of DR 7-103(B) requires disclosure of the reports in this case because the reports are evidence "that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."*

{¶ 61} DR 7-103(B) states: "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."

{¶ 62} Crim.R. 16(B)(1)(f) states: "Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment."

{¶ 63} The chief difference in these two rules is in their descriptions of the evidence subject to disclosure. Under Crim.R. 16(B)(1)(f), the prosecuting attorney must disclose all evidence "material" to guilt or punishment, whereas under DR 7-103(B), the prosecuting attorney must disclose all evidence "that tends to" negate guilt or lessen the criminal consequences.

{¶ 64} Crim.R. 16(B)(1)(f) is a prophylactic rule, mirroring the rule explained in *Brady v. Maryland*, which describes the role of the Due Process Clause in ensuring that a defendant receives a fair trial by receiving all materially exculpatory evidence. 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

{¶ 65} The United States Supreme Court has considered the difference between the disclosure rule of *Brady*, which, like Crim.R. 16(B)(1)(f), requires disclosure of "material" evidence, and ABA model rules, which, like DR 7-103(B), require disclosure of evidence that "tends to" negate guilt or lessen the

offense. *Kyles v. Whitley* (1995), 514 U.S. 419, 436-437, 115 S.Ct. 1555, 131 L.Ed.2d 490. The court noted that "the rule in [*Brady*] requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate." Id. at 437. The court also referred to ABA Model Rule of Professional Conduct 3.8(d) (1984), which contains language similar to Ohio's current Prof.Cond.R. 3.8(d), the successor to DR 7-103(B). Thus, the United States Supreme Court has recognized that in some cases, rules governing the conduct of prosecuting attorneys may require greater disclosure of evidence favorable to the defense than the defendant would be entitled to under the Constitution alone.

{¶ 66} By artificially constraining DR 7-103 to the scope of Crim.R. 16(B)(1)(f), the majority has improperly added words to the rule. The word "material" does not appear in DR 7-103.

{¶ 67} The question under DR 7-103(B), by its own terms, is whether the evidence is of the type "that tends to" negate the defendant's guilt or lessen his offense or punishment. This finding can be made by relating the undisclosed evidence to the offense charged.

{¶ 68} In this case, the victim's inconsistent statements amount to evidence that "tends to" negate the guilt or lessen the level of the offense and the punishment under DR-7-103(B). The two undisclosed reports add some conflicting evidence, albeit very little, on the issue of the victim's age at the time the acts were committed—an element of the offense charged. According to these reports, the victim stated that the rapes occurred in 2001, which would mean that she was 13 years old and that therefore the defendant could not be convicted for rape of a 12-year-old. The defense should have been informed of the existence of this evidence in order to decide whether to attack the state's proffered timeline or at least impeach the victim's credibility. The evidence tended to negate the defendant's guilt and should have been disclosed under DR 7-103(B).

17

*A broad reading of DR 7-103(B) will not result in "open discovery."*

{¶ 69} The respondent claims that the result of a broad reading of DR 7-103(B) will be "open discovery" in criminal cases.[2] A prosecuting attorney must disclose all evidence tending to negate the defendant's guilt or lessen the offense or punishment under DR 7-103(B). This has been the rule since this court adopted DR 7-103 almost 40 years ago. Any evidence that does not have such a tendency need not be disclosed. The premise of the rule is that fair trials in our system of criminal justice are more likely to occur when prosecutors do not play "hide the ball" with defense counsel.

{¶ 70} To the extent that policy considerations should play any role in our disposition of this case, I prefer the position of the court in *Kyles*, that disclosure is preferable in close cases, because "it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." 514 U.S. at 440, 115 S.Ct. 1555, 131 L.Ed.2d 490.

*DR 7-103(B) and Crim.R. 16(B)(1)(f) serve different purposes.*

{¶ 71} The purpose of Crim.R. 16(B)(1)(f) is to ensure that persons charged with a crime will receive a fair trial. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 40. The question for constitutional purposes is "not whether the defendant would more likely than not have received a different verdict with the [undisclosed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of

---

2. We have proposed changes to Crim.R. 16, subject to the General Assembly's approval. The Staff Notes to the proposed rule state: "The purpose of the revisions to Criminal Rule 16 is to provide for a just determination of criminal proceedings and to secure the fair, impartial, and speedy administration of justice through the expanded scope of materials to be exchanged between the parties." The summary accompanying the public notice of the proposed rule states: "Criminal Rule 16 is rewritten to provide a system of more open discovery in criminal cases." The proposed rule contemplates increasing the amount of materials exchanged in discovery in criminal cases. Nothing in the decision of this case should be construed to limit a reasonable, differing construction of the new rule, should it be implemented.

confidence." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555, 131 L.Ed.2d 490. This fair-trial analysis, centering on the rights of the accused, has a different purpose than a rule of conduct describing professional responsibilities.

{¶ 72} The constitutional protection inscribed in Crim.R. 16(B)(1)(f) requires that the defendant is entitled to discovery of any favorable evidence that is "material" to guilt or punishment. Materiality is determined by evaluating whether the evidence that was not disclosed before trial now casts a new light on the case and undermines the confidence in the jury verdict. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio- 4837, 873 N.E.2d 858, ¶ 40. This analysis requires a court to review the case against a defendant to determine whether " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " Id. at ¶ 39, quoting *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.

{¶ 73} Although a materiality requirement may be in keeping with the fair-trial rights afforded to criminal defendants, it does not comport with DR 7-103(B). The word "material" does not appear in DR 7-103(B); instead, the question is whether the undisclosed evidence, standing alone, tends to negate the guilt of the accused. In view of the plain language of DR 7-103(B), the test announced by the majority, requiring a weighing of the evidence in an underlying criminal trial, is wholly inappropriate.

{¶ 74} The professional conduct of an attorney should not be based upon the quantum of evidence produced at a criminal trial, or whether a defendant pleads guilty, regardless of the attorney's conduct. Rather, the conduct of an attorney should be evaluated on the basis of her own actions. The true measure of whether her conduct comports with her professional obligations as an officer of the court is found in the Code of Professional Responsibility. A prosecutor's professional duty can be greater than simply observing the criminal rules. EC 7-13 extols the role of a prosecutor in these words: "The responsibility of a public

prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."

**{¶ 75}** The majority's observation that "[o]ur decision today should not be construed as an endorsement of respondent's nondisclosure of the reports" is a poor substitute for DR 7-103(B). Indeed, I fear that attorneys will pay greater heed to the majority's actual approach—"no constitutional violation, no misconduct"—and that will become the new measure of professionalism under DR 7-103 and its successor, Prof.Cond.R. 3.8.

*Even if we adopt a materiality requirement for DR 7-103(A),*

*United States v. Ruiz is inapplicable to this case.*

**{¶ 76}** Even if we could insert a materiality requirement into DR 7-103(B), the majority vastly overreaches by applying the evolving standards of *Brady* and Crim.R. 16(B)(1)(f) in the context of attorney discipline. The criminal rules are demonstrably unsuitable for use as rules governing attorney conduct. The ill fit is manifest in this case.

**{¶ 77}** Under the materiality standard of Crim.R. 16, evidence that goes to the credibility of the victim must be disclosed by the prosecutor, when the reliability of the victim is likely to be relevant to guilt. See *United States v. Ruiz* (2002), 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586, citing *Giglio v. United States* (1972), 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104. The majority seems to concede this point. Nevertheless, the majority overlooks respondent's failure to disclose this evidence in this case, based upon the erroneous notion that *Ruiz* applies.

**{¶ 78}** *Ruiz* holds that a defendant who enters a guilty plea thereby waives the right to complain of certain constitutional errors. *Ruiz*, 536 U.S. at 630, 122 S.Ct. 2450, 153 L.Ed.2d 586. This waiver includes a waiver of the fair-trial right to obtain material discovery from the prosecution. Id.

{¶ 79} The court's reasoning in *Ruiz* bears absolutely no relation to the issue of whether the prosecuting attorney has committed professional misconduct. Extending *Ruiz* into the area of attorney discipline is unwarranted, even if a materiality requirement is applied to DR 7-103(B).

{¶ 80} When a defendant submits a discovery request and the prosecutor fails to produce favorable evidence that tends to negate guilt or lessen punishment, it is immaterial whether the defendant ultimately enters a plea agreement. If the prosecutor has committed misconduct along the way, a defendant's waiver of certain constitutional errors does not mitigate the prosecutor's professional misconduct.

### Respondent violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation

{¶ 81} Respondent, in communicating with the court, twice misrepresented the statements of the victim. In the bill of particulars, the respondent stated: "The victim was interviewed by [the Logan County Children's Services employee] on June 12, 2002. She reported that the Defendant raped her on two occasions over the summer of 2000." In fact, the victim reported that she had been raped in 2001, according to the reports. During the plea hearing, respondent stated, "The victim was interviewed by [the Logan County Children's Services employee] on June 12, 2002. She reported what had taken place over the year of 2000." Again, the victim actually reported dates in 2001, according to the reports.

{¶ 82} The majority reweighs the evidence of the DR 1-102(A)(4) violations and concludes that the sanctions recommended by the panel and board should not be imposed. The majority determines that the relator has failed to prove that respondent's statements were false, because it is "more likely than not" that the interviewer misreported the dates actually communicated by the victim

and because respondent was representing to the court what the victim said, not what the report said. None of these matters were considered in the board's report.

{¶ 83} I would not reweigh the evidence considered by the board on this issue. While it is possible to construe respondent's comments as good-faith interpretations of the evidence in her possession, this does not change the fact that her statements appear intended to justify her decision to withhold discoverable evidence from the defendant. Indeed, the board was troubled by this as well. Respondent did not qualify her statements to the court; she simply presented her view of the evidence in the guise of the victim's own statements. Respondent's statements to the court served to ensure that the inconsistencies would remain in the prosecutor's office, and not in the courtroom.

{¶ 84} I agree with the board that respondent's statements were false. I further agree that when coupled with the failure to disclose the underlying reports, respondent's misrepresentations "strike at the very heart and soul of a fair trial." I am mindful of the prosecutor's high professional responsibilities. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." Prof.Cond.R. 3.8, Official Comment 1. Therefore, I would adopt the board's findings that respondent violated DR 1-102(A)(4).

## Sanction

{¶ 85} I would impose the sanction recommended by the board: a 12-month suspension with six months stayed. Respondent has commendable mitigating circumstances, but the misconduct in this case is severe.

{¶ 86} For the foregoing reasons, I respectfully dissent.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter, Christopher J. Weber, and Geoffrey Stern, for respondent.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman and Philip R. Cummings, Assistant Prosecuting Attorneys, for amicus curiae Ohio Prosecuting Attorneys Association.

Robin N. Piper, Butler County Prosecuting Attorney, and Daniel G. Eichel and Lina N. Alkamhawi, Assistant Prosecuting Attorneys, for amicus curiae Butler County Prosecuting Attorney.

_____