Moyer, C.J.,
dissenting.
{¶ 45} I respectfully dissent from the majority opinion. I disagree with the proposition that DR 7-103(B) is, or should be, limited by Crim.R. 16(B)(1)(f) and the corresponding constitutional analysis. The majority opinion disregards the plain language and purposes of the former Code of Professional Responsibility and the Rules of Criminal Procedure. Additionally, I disagree with the majority’s inclination to reweigh the evidence in order to reject the board’s finding of violations of DR 1-102(A)(4). I would adopt the sanction recommended by the board of a 12-month suspension with six months stayed.
The misconduct
{¶ 46} Respondent prosecuted a rape case in which the severity of the offenses was based upon the age of the victim. In evaluating the case for trial, respondent determined that overwhelming evidence supported her view that the crimes occurred in 2000, when the victim was 12 years old. However, respondent possessed two reports — one generated by the county’s children services agency and one by the sheriffs office — both of which indicated that the victim had reported that the crimes occurred in 2001. Respondent, in her professional judgment and based upon her research, viewed the dates in these reports as inaccurate and therefore unreliable and concluded that the crimes had actually occurred in 2000, when the victim was 12 years old. Therefore, respondent elected to pursue charges for rape of a person under 13 years of age against the defendant.
{¶ 47} The defendant was charged with four counts of rape of a person under the age of 13 in violation of R.C. 2907.02(A)(1)(b) and two counts of rape of a person under the age of 13 by use of force or threat in violation of R.C. 2907.02(A)(1)(b) and (A)(2). All of the offenses were first-degree felonies. The R.C. 2907.02(A)(1)(b) charges for rape of a person under 13 years of age carried potential sentences of three to ten years (under former R.C. 2929.14(A)(1)). The *424 R.C. 2907.02(A)(1)(b) and (A)(2) charges for rape of a person under 13 years of age by force or threat carried life sentences (under former R.C. 2907.02(B)). Had the victim been 13 years of age, then the life sentence would not have been an available punishment and the longest sentence that the defendant would have faced would have been ten-year sentences for the remaining first-degree rape charges.
{¶ 48} Thus, the age of the victim was relevant to the potential length of incarceration, with a maximum life sentence available if the victim was under 13 years of age. Moreover, the timeline of events was important to the state’s case because in order to prove the crimes charged, the state needed to show that the offenses occurred in 2000, when the victim was 12 years old.
{¶ 49} In responding to the defendant’s discovery request, respondent decided to withhold from the defendant the two reports containing the 2001 dates given by the victim. Later, in the bill of particulars, respondent described the two interviews of the victim but stated, without qualification, that the victim reported that she had been raped on two occasions in 2000. By implication, the bill of particulars asserted that the defense would not find any exculpatory material in the reports themselves.
{¶ 50} Respondent completed her gloss on the evidence at the defendant’s plea hearing. During that hearing, respondent stated to the court that the victim had been interviewed by a therapist and by a children’s services employee and that the victim reported that the crimes occurred in 2000.
{¶ 51} Thus, the defense did not have these reports to review and could not have noted the inconsistency between the dates in the reports and those inherent in the charges against him. Based on respondent’s statements reported in the bill of particulars and at the plea hearing, the defendant had no reason to know that the reports contained information relating to his guilt on the charges against him.
The effect of the majority decision
{¶ 52} Respondent was faced with inconsistent evidence, evidence that the defense could have used at the least to challenge the credibility of the victim and at the most to undermine the assertion regarding the victim’s age in the charges against the defendant.[1] Yet she was obliged to respond to the defendant’s discovery requests.
*425 {¶ 53} In doing so, respondent chose to withhold the reports and not reveal the inconsistencies contained within them. Respondent did not provide the reports during discovery and misstated the contents of those reports in the bill of particulars and to the court during the plea hearing.
{¶ 54} Respondent admits that she knew of the inconsistencies in the reported statements of the victim with the timeline asserted by the state but claims that (1) the reports need not have been provided to the defense under the Code of Professional Responsibility because they were not subject to disclosure under Crim.R. 16(B)(1)(f) and Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and (2) the statements in the bill of particulars and the statements made during the plea hearing did not constitute breaches of respondent’s professional responsibilities, because she made the statements in good faith and in her professional judgment on the belief that the facts and evidence supported them.
{¶ 55} The effect of the majority opinion is to adopt respondent’s position on the obligations of a prosecutor. Thus, the prosecutor does not violate the Code of Professional Responsibility unless she has violated the defendant’s fair-trial discovery rights under the Due Process Clause of the United States Constitution and the attendant Rules of Criminal Procedure. And the prosecutor may misrepresent the contents of relevant written reports to the defense and the court, so long as the misrepresentation does not rise to the level of a deprivation of constitutional rights and she misrepresents them in a way that is consistent with her good-faith view of the evidence.
{¶ 56} The majority goes one step further and holds that so long as the case ends with a plea, DR 7-103(B) cannot be violated at all.
{¶ 57} The board did not, and I too cannot, agree that the rules of professional conduct permit such an outcome.
DR 7-103(B) requires more of the prosecutor than the related rule of criminal procedure
{¶ 58} The board found that respondent violated DR 7-103(B), 7-102(A), and 1-102(A)(5) by failing to disclose the two reports. The violations of DR 7-102(A) and 1-102(A)(5) flow from the finding of the board that respondent violated DR 7-103(B). Therefore, I limit my discussion to DR 7-103(B).
{¶ 59} The majority holds that the disclosure requirements placed upon a prosecutor by DR 7-103(B) are limited in scope to the requirements of Crim.R. *426 16(B)(1)(f). Accordingly, the majority holds that if Crim.R. 16(B)(1)(f) is not violated, then, a fortiori, DR 7-103(B) is not violated.
{¶ 60} Because the disciplinary rule differs from the related rule of criminal procedure in plain language and purpose, I disagree. I would hold that the disciplinary rule requires more of a prosecuting attorney than does the rule of criminal procedure. Such a holding would not require “open discovery” as the majority fears. Moreover, I find that United States v. Ruiz (2002), 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586, does not control this case. Ruiz concerned the constitutional right to a fair trial and the waiver of that right by a defendant when he executed a plea; this case concerns the rules of conduct governing prosecutors when they possess evidence favorable to the defense. The holding of Ruiz has no bearing on the question of the professional conduct of a prosecuting attorney.

The plain language of DR 7-103(B) requires disclosure of the reports in this case because the reports are evidence “that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment.”

{¶ 61} DR 7-103(B) states: “A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment.”
{¶ 62} Crim.R. 16(B)(1)(f) states: “Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment.” {¶ 63} The chief difference in these two rules is in their descriptions of the evidence subject to disclosure. Under Crim.R. 16(B)(1)(f), the prosecuting attorney must disclose all evidence “material” to guilt or punishment, whereas under DR 7-103(B), the prosecuting attorney must disclose all evidence “that tends to” negate guilt or lessen the criminal consequences.
{¶ 64} Crim.R. 16(B)(1)(f) is a prophylactic rule, mirroring the rule explained in Brady v. Maryland, which describes the role of the Due Process Clause in ensuring that a defendant receives a fair trial by receiving all materially exculpatory evidence. 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (“the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution”).
{¶ 65} The United States Supreme Court has considered the difference between the disclosure rule of Brady, which, like Crim.R. 16(B)(1)(f), requires *427 disclosure of “material” evidence, and AJBA model rules, which, like DR 7-103(B), require disclosure of evidence that “tends to” negate guilt or lessen the offense. Kyles v. Whitley (1995), 514 U.S. 419, 436-437, 115 S.Ct. 1555, 131 L.Ed.2d 490. The court noted that “the rule in [Brady ] requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.” Id. at 437, 115 S.Ct. 1555, 131 L.Ed.2d 490. The court also referred to ABA Model Rule of Professional Conduct 3.8(d) (1984), which contains language similar to Ohio’s current Prof.Cond.R. 3.8(d), the successor to DR 7-103(B). Thus, the United States Supreme Court has recognized that in some cases, rules governing the conduct of prosecuting attorneys may require greater disclosure of evidence favorable to the defense than the defendant would be entitled to under the Constitution alone.
{¶ 66} By artificially constraining DR 7-103 to the scope of Crim.R. 16(B)(1)(f), the majority has improperly added words to the rule. The word “material” does not appear in DR 7-103.
{¶ 67} The question under DR 7-103(B), by its own terms, is whether the evidence is of the type “that tends to” negate the defendant’s guilt or lessen his offense or punishment. This finding can be made by relating the undisclosed evidence to the offense charged.
{¶ 68} In this case, the victim’s inconsistent statements amount to evidence that “tends to” negate the guilt or lessen the level of the offense and the punishment under DR-7-103(B). The two undisclosed reports add some conflicting evidence, albeit very little, on the issue of the victim’s age at the time the acts were committed — an element of the offense charged. According to these reports, the victim stated that the rapes occurred in 2001, which would mean that she was 13 years old and that therefore the defendant could not be convicted for rape of a 12-year-old. The defense should have been informed of the existence of this evidence in order to decide whether to attack the state’s proffered timeline or at least impeach the victim’s credibility. The evidence tended to negate the defendant’s guilt and should have been disclosed under DR 7-103(B).

A broad reading of DR 7-10S(B) will not result in “open discovery.”

{¶ 69} The respondent claims that the result of a broad reading of DR 7-103(B) will be “open discovery” in criminal cases.[2] A prosecuting attorney must *428 disclose all evidence tending to negate the defendant’s guilt or lessen the offense or punishment under DR 7 — 103(B). This has been the rule since this court adopted DR 7-103 almost 40 years ago. Any evidence that does not have such a tendency need not be disclosed. The premise of the rule is that fair trials in our system of criminal justice are more likely to occur when prosecutors do not play “hide the ball” with defense counsel.
{¶ 70} To the extent that policy considerations should play any role in our disposition of this case, I prefer the position of the court in Kyles, that disclosure is preferable in close cases, because “it will tend to preserve the criminal trial, as distinct from the prosecutor’s private deliberations, as the chosen forum for ascertaining the truth about criminal accusations.” 514 U.S. at 440, 115 S.Ct. 1555, 131 L.Ed.2d 490.

DR 7-103(B) and Crim.R. 16(B)(1)(f) serve different purposes.

{¶ 71} The purpose of Crim.R. 16(B)(1)(f) is to ensure that persons charged with a crime will receive a fair trial. State v. Brown, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 40. The question for constitutional purposes is “not whether the defendant would more likely than not have received a different verdict with the [undisclosed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles, 514 U.S. at 434, 115 S.Ct. 1555, 131 L.Ed.2d 490. This fair-trial analysis, centering on the rights of the accused, has a different purpose than a rule of conduct describing professional responsibilities.
{¶ 72} The constitutional protection inscribed in Crim.R. 16(B)(1)(f) requires that the defendant is entitled to discovery of any favorable evidence that is “material” to guilt or punishment. Materiality is determined by evaluating whether the evidence that was not disclosed before trial now casts a new light on the case and undermines the confidence in the jury verdict. State v. Brown, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 40. This analysis requires a court to review the case against a defendant to determine whether “ ‘there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ ” Id. at ¶ 39, quoting United States v. Bagley (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.
{¶ 73} Although a materiality requirement may be in keeping with the fair-trial rights afforded to criminal defendants, it does not comport with DR 7-103(B). The word “material” does not appear in DR 7-103(B); instead, the question is *429 whether the undisclosed evidence, standing alone, tends to negate the guilt of the accused. In view of the plain language of DR 7-103(B), the test announced by the majority, requiring a weighing of the evidence in an underlying criminal trial, is wholly inappropriate.
{¶ 74} The professional conduct of an attorney should not be based upon the quantum of evidence produced at a criminal trial, or whether a defendant pleads guilty, regardless of the attorney’s conduct. Rather, the conduct of an attorney should be evaluated on the basis of her own actions. The true measure of whether her conduct comports with her professional obligations as an officer of the court is found in the Code of Professional Responsibility. A prosecutor’s professional duty can be greater than simply observing the criminal rules. EC 7-13 extols the role of a prosecutor in these words: “The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.”
{¶ 75} The majority’s observation that “[o]ur decision today should not be construed as an endorsement of respondent’s nondisclosure of the reports” is a poor substitute for DR 7-103(B). Indeed, I fear that attorneys will pay greater heed to the majority’s actual approach — “no constitutional violation, no misconduct” — and that will become the new measure of professionalism under DR 7-103 and its successor, Prof.Cond.R. 3.8.

Even if we adopt a materiality requirement for DR 7-108(A), United States v. Ruiz is inapplicable to this case.

{¶ 76} Even if we could insert a materiality requirement into DR 7-103(B), the majority vastly overreaches by applying the evolving standards of Brady and Crim.R. 16(B)(1)(f) in the context of attorney discipline. The criminal rules are demonstrably unsuitable for use as rules governing attorney conduct. The ill fit is manifest in this ease.
{¶ 77} Under the materiality standard of Crim.R. 16, evidence that goes to the credibility of the victim must be disclosed by the prosecutor, when the reliability of the victim is likely to be relevant to guilt. See United States v. Ruiz (2002), 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586, citing Giglio v. United States (1972), 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104. The majority seems to concede this point. Nevertheless, the majority overlooks respondent’s failure to disclose this evidence in this case, based upon the erroneous notion that Ruiz applies.
{¶ 78} Ruiz holds that a defendant who enters a guilty plea thereby waives the right to complain of certain constitutional errors. Ruiz, 536 U.S. at 630, 122 S.Ct. 2450, 153 L.Ed.2d 586. This waiver includes a waiver of the fair-trial right to obtain material discovery from the prosecution. Id.
*430 {¶ 79} The court’s reasoning in Ruiz bears absolutely no relation to the issue of whether the prosecuting attorney has committed professional misconduct. Extending Ruiz into the area of attorney discipline is unwarranted, even if a materiality requirement is applied to DR 7-103(B).
{¶ 80} When a defendant submits a discovery request and the prosecutor fails to produce favorable evidence that tends to negate guilt or lessen punishment, it is immaterial whether the defendant ultimately enters a plea agreement. If the prosecutor has committed misconduct along the way, a defendant’s waiver of certain constitutional errors does not mitigate the prosecutor’s professional misconduct.
Respondent violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation
{¶ 81} Respondent, in communicating with the court, twice misrepresented the statements of the victim. In the bill of particulars, the respondent stated: “The victim was interviewed by [the Logan County Children’s Services employee] on June 12, 2002. She reported that the Defendant raped her on two occasions over the summer of 2000.” In fact, the victim reported that she had been raped in 2001, according to the reports. During the plea hearing, respondent stated, “The victim was interviewed by [the Logan County Children’s Services employee] on June 12, 2002. She reported what had taken place over the year of 2000.” Again, the victim actually reported dates in 2001, according to the reports.
{¶ 82} The majority reweighs the evidence of the DR 1-102(A)(4) violations and concludes that the sanctions recommended by the panel and board should not be imposed. The majority determines that the relator has failed to prove that respondent’s statements were false, because it is “more likely than not” that the interviewer misreported the dates actually communicated by the victim and because respondent was representing to the court what the victim said, not what the report said. None of these matters were considered in the board’s report.
{¶ 83} I would not reweigh the evidence considered by the board on this issue. While it is possible to construe respondent’s comments as good-faith interpretations of the evidence in her possession, this does not change the fact that her statements appear intended to justify her decision to withhold discoverable evidence from the defendant. Indeed, the board was troubled by this as well. Respondent did not qualify her statements to the court; she simply presented her view of the evidence in the guise of the victim’s own statements. Respondent’s statements to the court served to ensure that the inconsistencies would remain in the prosecutor’s office, and not in the courtroom.
{¶ 84} I agree with the board that respondent’s statements were false. I further agree that when coupled with the failure to disclose the underlying *431 reports, respondent’s misrepresentations “strike at the very heart and soul of a fair trial.” I am mindful of the prosecutor’s high professional responsibilities. “A prosecutor has the responsibility of a minister of justice and not simply that of an advocate.” Prof.Cond.R. 3.8, Official Comment 1. Therefore, I would adopt the board’s findings that respondent violated DR 1 — 102(A)(4).
Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.
Kegler, Brown, Hill & Ritter, Christopher J. Weber, and Geoffrey Stern, for respondent.
Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman and Philip R. Cummings, Assistant Prosecuting Attorneys, for amicus curiae Ohio Prosecuting Attorneys Association.
Robin N. Piper, Butler County Prosecuting Attorney, and Daniel G. Eichel and Lina N. Alkamhawi, Assistant Prosecuting Attorneys, for amicus curiae Butler County Prosecuting Attorney.
Sanction
{¶ 85} I would impose the sanction recommended by the board: a 12-month suspension with six months stayed. Respondent has commendable mitigating circumstances, but the misconduct in this case is severe.
{¶ 86} For the foregoing reasons, I respectfully dissent.

. The majority asserts that the statements were hearsay and could therefore be used by the defendant only to challenge the credibility of the declarant. However, that is not an issue before us. Further, the defense was not given the opportunity to explore the veracity of the statements and was denied the ability to pursue avenues of defense preparation that could have resulted. And the defense was not aware of the potential weaknesses in the state’s case. Thus, it is not *425 completely accurate to say that the only use for the reports of the victim’s inconsistent statements would have been as impeachment evidence.

. We have proposed changes to Crim.R. 16, subject to the General Assembly’s approval. The Staff Notes to the proposed rule state: “The purpose of the revisions to Criminal Rule 16 is to provide for a just determination of criminal proceedings and to secure the fair, impartial, and speedy administration of justice through the expanded scope of materials to be exchanged between the parties.” The summary accompanying the public notice of the proposed rule states: “Criminal Rule *428 16 is rewritten to provide a system of more open discovery in criminal cases.” The proposed rule contemplates increasing the amount of materials exchanged in discovery in criminal cases. Nothing in the decision of this case should be construed to limit a reasonable, differing construction of the new rule, should it be implemented.