

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-84,073-01

**EX PARTE MARTIN PENA, Applicant**

**ON APPLICATION FOR WRIT OF HABEAS CORPUS
IN CAUSE NO. 1379020-A IN THE 184TH DISTRICT COURT
HARRIS COUNTY**

RICHARDSON, J., filed a dissenting opinion in which ALCALA and WALKER, JJ. joined.

### DISSENTING OPINION

In this case, the trial court recommended that we grant relief based on its finding that "Applicant's plea was not voluntary because, at the time of the plea, Applicant was not aware of Officer Carrion's unlawful conduct in this case." Contrary to the trial court's recommendation, this Court denies Applicant relief based on its own review of the record. Because I would have followed the recommendation of the trial court, respectfully, I dissent.

## I.

Applicant pled guilty to the first degree felony of manufacturing/delivering cocaine over 400 grams.[1] Two years after pleading guilty, Applicant discovered that Officer Miguel Carrion, his arresting officer, was convicted in federal court for his part in a drug-swapping conspiracy with drug cartel members. The trial court found "that Officer Carrion conspired to steal evidence related to Applicant's case, conspired to replace the evidence with fake drugs that the conspiracy had fabricated, and that Officer Carrion had used his knowledge as a police officer to ensure that the fabricated evidence would withstand forensic analysis by the Houston Police Department." Because Applicant was not made aware of Officer Carrion's misconduct at the time of his plea, the trial court concluded that Applicant's plea was involuntary. I agree.

### The Traffic Stop and Applicant's Plea Agreement

On February 27, 2013, Officers Carrion and Stewart stopped Applicant's vehicle because he had committed the traffic violation of making "erratic" lane changes without signaling. During the traffic stop, the officers noticed that his brake lights were out and that he did not have proof of insurance. They also discovered that Applicant had an outstanding warrant, so he was placed under arrest. Officer Pritchett soon arrived at the scene and conducted an inventory search of Applicant's vehicle pursuant to department policy. During

---

[1] TEX. HEALTH & SAFETY CODE § 481.112.

the search, Officer Pritchett discovered a cooler in the backseat. Inside the cooler were 26 individually wrapped packages that appeared to the officers to be narcotics. Officer Carrion cut into one of the packages (one he *knew* would be sprinkled with cocaine) to remove a portion of the substance so that it could be field-tested. The substance field-tested positive for cocaine. On June 25, 2013, the Houston Police Department crime-lab tested the seized packages and concluded that cocaine was present. The crime lab does not generally conduct purity tests—a fact that Officer Carrion knew.

On October 10, 2013, Applicant pled guilty, pursuant to a plea agreement, to possession with intent to deliver more than 400 grams of cocaine, the highest level of drug offense. He was sentenced to the statutory minimum term of 15 years in prison.[2] The plea paperwork contained no police reports. The plea tracked the language of the indictment, which was that Applicant "knowingly possess[ed] with intent to deliver a controlled substance, namely, COCAINE, weighing at least 400 grams by aggregate weight, including any adulterants and dilutants."

*Officer Carrion's Conspiracy*

The DEA and FBI first became aware of Officer Carrion in July 2013, when they observed him providing security for a drug transaction not related to Applicant's case. The DEA eventually learned from a confidential informant that Officer Carrion was involved in

---

[2] TEX. HEALTH & SAFETY CODE § 481.112(f).

a drug swapping scheme with cartel members so that they could steal drugs from narcotics traffickers. According to the State's *Brady v. Maryland*[3] notice, "the scheme involved the swapping of 'real' drugs for packages of 'sheetrock' that had cocaine sprinkled on top." Once the drugs were swapped, Officer Carrion would then intercept the sheetrock before it was delivered. The purpose of intercepting the sheetrock, according to the trial judge's findings, was to conceal the "theft from the police and narcotics traffickers."

On April 16, 2014, Officer Carrion was indicted by a federal grand jury for one count of conspiracy to possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine.[4] On October 9, 2014, Officer Carrion pled guilty pursuant to a plea agreement. On March 20, 2015, he was sentenced to 5 years and 10 months in prison.[5]

*Officer Carrion's Misconduct in Applicant's Case*

A confidential informant disclosed to the DEA that Officer Carrion had swapped out the drugs in Applicant's case, and that the swap occurred prior to Applicant coming into possession of the packages. Upon learning this information, the DEA tested the "drugs" seized during Applicant's arrest. According to the November 13, 2014, DEA report, 16 out

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846 (2012).

[5] Had Officer Carrion gone to trial, he faced a sentence of at least 10 years. *See* 21 U.S.C. § 841(b)(1)(A) (the violation of which Officer Carrion is charged requires a person be "sentenced to a term of imprisonment which may not be less than 10 years or more than life").

of the 26 packages contained only trace amounts of cocaine, and the other 10 packages did not contain any cocaine.

In December 2014, the Harris County District Attorney's Office became aware for the first time of Officer Carrion's misconduct in Applicant's case and notified the trial court judge, Jan Krocker. On December 22, 2014, Judge Krocker emailed an attorney at the Harris County Public Defender's Office with a summation of the concerns that had been expressed to her by the Harris County DA's office. One of those concerns she passed on was that "[t]he defendant should have been charged with PCS less than a gram." In that same email, Judge Krocker inquired about a writ being filed based on this new information. On December 29, 2014, an assistant district attorney and a public defender were emailing back and forth about Applicant's case. The ADA agreed that Applicant possessed "something that contained very little *actual* cocaine," but was unsure about "the 'adulterants and dilutants' language in the statute."

On March 16, 2015, the State provided Applicant with a formal *Brady v. Maryland* notice. The State's *Brady v. Maryland* Notice informed Applicant:

- that the DEA tested the evidence in Pena's case because they had received information from a confidential informant (CI) about a drug "swapping" scheme involving former Houston Police Department Officer Marcos Carrion, currently under federal indictment and awaiting sentencing from his role in providing security to drug traffickers;

- that the scheme involved the swapping of "real" drugs for packages of "sheetrock" that had cocaine sprinkled on top;

- that the lab testing done by the DPS laboratory confirmed that the packages transported by Pena contained only trace amounts of cocaine;

- that it was determined that there were not any concerns about HPD's initial lab report, as HPD's controlled substances lab does not do "purity" testing; and

- that the absence of purity testing by HPD's lab was a fact was [*sic*] known by Carrion and thus corroborated his role in the swapping scheme.

*The Trial Court's Findings of Fact and Conclusions of Law*

On October 5, 2015, the trial court adopted, with handwritten changes, Applicant's proposed findings of fact and conclusions of law. On May 9, 2016, the trial court adopted, also with handwritten changes, Applicant's proposed supplemental findings of fact and conclusions of law. The trial court found that:

Carrion specifically targeted [Applicant] to seize fake drugs from [Applicant's] vehicle. As part of a conspiracy, Carrion stole drugs from narcotics traffickers, replaced the drugs with sheetrock laced with cocaine, and intercepted the fake drugs before they could be delivered, concealing evidence of Carrion's theft from the police and narcotics traffickers.

The State, the defense, and the Court all agree that Officer Carrion conspired to tamper with and fabricate evidence in Applicant's case.

The State, the defense, and the Court all agree that, at the time of Applicant's plea, Applicant was unaware that Officer Carrion, as part of a conspiracy, tampered with and fabricated evidence in Applicant's case.

Among other things, the trial court concluded—relying on *Ex parte Mable*[6]—that Applicant's plea was involuntary and recommended that this Court grant relief on that basis.

**II.**

A guilty plea must be entered knowingly and voluntarily.[7] A guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."[8] This Court has interpreted this to mean "that the defendant must have 'sufficient awareness of the relevant circumstances.'"[9] We must determine "whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant."[10] If the undisclosed information is crucial to a defendant's case, and the defendant is operating under such a misunderstanding, then the defendant "cannot be said to have entered his plea knowingly and intelligently."[11] Specifically, a defendant "who has pled guilty because he believed he had committed a specific offense, when objective and

---

[6] *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014).

[7] *Id.*

[8] *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

[9] *Mable*, 443 S.W.3d at 131 (first quoting *Brady v. United States*, 397 U.S. 742, 748 (1970); and then citing *United States v. Ruiz*, 536 U.S. 622, 629 (2002)).

[10] *Id.*

[11] *Id.*

essentially irrefutable facts demonstrate that he did not commit that offense, has not made an informed choice."[12]

### III.

Applicant claims that his plea was involuntary because at the time of the plea, he was operating under the misunderstanding that he possessed 26 one-kilogram packages of cocaine when in fact he possessed less than a gram of actual cocaine. This is a crucial fact to his case that is supported by both the DEA and State. The DEA laboratory report definitively shows that the substance seized contained only trace amounts of cocaine.[13] The State also expressed at one point in the writ process that Applicant should have been convicted of possessing less than one gram of cocaine.[14]

Yet, the plurality of this Court, citing to Texas Health and Safety Code section 481.002(5), concludes that, as a matter of law, *all* of the substance Applicant possessed was cocaine. Section 481.002(5) provides that "[c]ontrolled substance" means "a substance, including a drug, an adulterant, and a dilutant," and "includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance."[15] Applying the logic

---

[12] *Ex parte Palmberg*, 491 S.W.3d 804, 811 (Tex. Crim. App. 2016).

[13] The DEA report noted that cocaine was "present at trace levels."

[14] It appears from reading the e-mail sent by Judge Krocker to the public defender that the ADA believed Applicant should have been convicted of possessing less than one gram of cocaine.

[15] TEX. HEALTH & SAFETY CODE § 481.002(5).

of today's plurality, even if Applicant possessed more than 25,999 grams[16] of sheetrock and less than one gram of cocaine, he is still guilty of possessing 26,000 grams of cocaine. I cannot envision that the Legislature intended such a result—where a corrupt police officer can change the degree of the offense by strategically placing trace amounts of cocaine onto a large amount of sheetrock.[17]

Notwithstanding this contention, I do not dispute that, technically, sprinkling a trace amount of cocaine on top of a kilogram of sheetrock might cause that kilogram to fall within the statutory definition of "controlled substance." But, would the sheetrock fall within the statutory definition of "adulterant or dilutant?" Arguably not. Under Section 481.002(49), "'adulterant or dilutant' means any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance."[18]

In any event and more importantly, this case does not involve an appeal based on legal sufficiency of the evidence to support the conviction. So the State's argument in its Original Answer to Applicant's writ application—"The purity of the cocaine is no consequence to the validity of the applicant's conviction"—is of no consequence to this writ application. The key here is that the relief sought is based on whether Applicant's agreement to plead guilty

---

[16] 1000 grams = 1 kilogram.

[17] *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991) (highlighting that by "arriving at a sensible interpretation" we are "demonstrat[ing] respect for [the legislative] branch, which we assume would not act in an absurd way").

[18] TEX. HEALTH & SAFETY CODE § 481.002(49).

was voluntary.

In *Ex parte Barnaby*, we held that "[a] guilty plea is a waiver of several federal constitutional rights, including the protections against self-incrimination, the right to a speedy and public trial by jury, and the right to confrontation."[19] We emphasized that the waiver must be voluntary, intelligent, and done "with sufficient awareness of the relevant circumstances and likely consequences."[20] In *Barnaby*, the issue involved materiality—what impact did the falsity of evidence have on the defendant's decision to plead guilty. But, in this case, Applicant persuaded the trial judge, and has persuaded me, that he would not have pled guilty to possessing over 400 grams of cocaine had he known that the "cocaine" that was seized was, in reality, sheetrock that had been sprinkled with a trace amount of cocaine by a corrupt arresting officer. It seems unlikely that Applicant would have accepted a fifteen-year sentence had he known what Officer Carrion had done and had he also known that Officer Carrion—the person who had stolen the real cocaine and who had profited from such illegal conduct—received less than a six-year sentence.

The issue, therefore, is whether, at the time of Applicant's plea, he had "sufficient awareness of the relevant circumstances," such that his plea was voluntarily and intelligently entered into. The existence of Officer Carrion's misconduct is a crucial fact that was not

---

[19] *Ex parte Barnaby*, 475 S.W.3d 316, 322 (Tex. Crim. App. 2015) (citing *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969)).

[20] *Id.*

known to Applicant at the time of the plea. According to the plurality opinion, Officer Carrion's misconduct was not a circumstance that was "relevant" to Applicant's case. I disagree. If a defendant's case is tainted with egregious police misconduct, the State has a problem with its case. And if the State has this type of problem with its case, I believe that is a "relevant circumstance" of which a defendant should be made aware. A defendant's right to due process should not be affected simply because he happened to plead guilty before the police misconduct came to light.

## CONCLUSION

I believe that Applicant operated under a misunderstanding as to a crucial fact related to his case. Hence, Applicant "cannot be said to have entered his plea knowingly and intelligently," and "with sufficient awareness of the relevant circumstances and likely consequences."[21] I am not suggesting that Applicant's case be thrown out[22]—just that he be allowed to withdraw his plea and start over with the knowledge and awareness of all of the crucial facts related to the State's case. The State is very confident in its position that Applicant is guilty of the offense with which he was charged despite Officer Carrion's misconduct. The State should be given the opportunity to prove its case, and Applicant

---

[21] *Id.*

[22] Nowhere in this dissenting opinion have I opined about the validity of a motion to suppress.

should be given the opportunity to put on a full defense.[23]  I would follow the trial court's recommendation and grant relief.  With these comments, respectfully, I dissent.

FILED: November 15, 2017

DO NOT PUBLISH

---

[23] I note that Applicant may have success by filing an action in federal court seeking relief under 28 U.S.C. § 2254.  *See Jackson v. Virginia*, 443 U.S. 307, 316, 320–21 (1979) ("Under 28 U.S.C. § 2254, a federal court must entertain a claim by a state prisoner that he or she is being held in 'custody in violation of the Constitution or laws or treaties of the United States.'").